ALBANY,<br>Oct. 1836.<br>Walden<br>v.<br>Davison.

New trial granted.

---

## WALDEN vs. DAVISON.

Where the *deputy* of a *sheriff* receives an execution, commanding not his principal but the sheriff of *another county* to make the money for which the process issues, the deputy may refuse to execute the writ; but if he does proceed and collect the money, having become possessed of it *under color or by virtue of his office*, his *principal* is liable to the plaintiff for the money thus collected, in an action for money had and received.

The execution in such case being *voidable* merely, is amendable.

THIS was an action of *assumpsit*, tried at the Allegany circuit in September, 1834, before the Hon. ADDISON GARDINER, one of the circuit judges.

The suit was brought to recover monies collected by one *Wilson*, a deputy of the defendant, while the latter was sheriff of *Allegany*. On the 7th October, 1820, Wilson received from the plaintiff a *fi. fa.* in his favor against M. Van Campen, directing to be levied $615,04, with interest from 15th February, 1820. The execution in the body thereof commanded the sheriff of *Cattaraugus* to cause the money to be levied. On the 11th October, Wilson wrote the plaintiff apprising him of the *mistake* in the execution, and saying that with his advice he would alter the writ, and proceed to collect the money. The plaintiff answered the letter by enclosing a *testatum fi. fa.* for the same amount, saying that his clerk had not only made the mistake pointed out by the deputy, had sent a *fi. fa.* instead of a *testatum*, and authorized the deputy to amend the *fi. fa.* by substituting the word *Allegany* for *Cattaraugus*, if he thought it would answer; but if he apprehended any difficulty, then to lay by the *fi. fa.* and make use of the *testatum*—which answer, with the execution enclosed, was received by Wilson on the 11th November,

1820. On the 25th November, 1822, the defendant paid $400 to the plaintiff, and took a receipt for the same, to be applied in the suit. The plaintiff gave in evidence two receipts—one for $89, and the other for $200—bearing date in February, 1823, given by Wilson to Van Campen on account of the execution, and produced an exemplification of the *fi. fa.* filed 17th March, 1823, with a return endorsed thereon, signed by Wilson, *that he had levied and collected the amount of the fi. fa.* The plaintiff also produced an exemplification of the *testatum fi. fa.* filed 25th February, 1834, with a return of *nulla bona* endorsed thereon, signed by Wilson. The defendant proved, without objection, that the *fi. fa.*, of which an exemplication had been produced, was amended *after it was returned and filed,* by striking out the word *Cattaraugus* in the body of the writ, and substituting the word *Allegany,* in pursuance of an order of this court made in August, 1834, which order was obtained without notice of the motion upon which it was founded having been given to the defendant in this cause, although notice was given to the defendant in the execution. The defendant also proved by Van Campen, the defendant in the execution, that no money or other thing was paid by him to Wilson at the time the two receipts for $89 and $200 were given, and that they were in fact not given until the spring of 1824. It however appeared that the money specified in the receipts was actually paid by Van Campen for the benefit of *Wilson,* who agreed that such payments should apply on the plaintiff's execution. There was no evidence that the *defendant* in this cause had any knowledge of either of the executions having come to the hands of his deputy. The defendant requested the judge to charge the jury that the return of Wilson upon the *fi. fa.* directed to the sheriff of *Cattaraugus,* could not affect him as sheriff of *Allegany ;* and that if they believed that the receipts given by Wilson to Van Campen were for a private debt due Wilson individually, that they should find a verdict for the defendant. The judge charged the jury that if the return of *satisfaction* upon the *fi. fa.* was made *previous* to the 14th November, 1820, ( the day when Wilson received the *testatum* execution,) the defendant could not be affected by it ; but if made after that day, of

which in his opinion there could be but little doubt, the re-
turn was *conclusive* upon him; that the law would intend
the amendment of the fi. fa. made by Wilson as having been
pursuant to instructions from the plaintiff in the execution, or
that the *satisfaction* was in fact upon the execution in his
hands rightly directed.  But if they should be of opinion that
the return of satisfaction was made *previous* to the 14th No-
vember, 1820, they would then inquire whether the money
specified in the two receipts was paid on the execution right-
ly directed, or on the individual account of Wilson: if the
former, they would find for the plaintiff; if the latter, for the
defendant.   The jury found for the plaintiff for $521,61.
The defendant asks for a new trial.  The case was submitted
on written arguments.

*H. Welles,* for the defendant.

*J. Collins & R. Lloyd,* for the plaintiffs.

*By the Court,* BRONSON, J.  The execution, when returned
and filed in the clerk's office, was a record, and like all other
records imported absolute verity.  The evidence given by the
defendant to contradict the exemplified copy of the writ was
wholly irregular, and in judgment of law proved nothing.  If
the sheriff was injured by the amendment ordered by the
court, without notice to him, he should have made a motion
to have the writ restored to its former state.   The propriety
of making the amendment, or the sufficiency of the grounds
on which it was ordered, could not be inquired into in any
collateral proceeding.   But no objection to the evidence was
made by the plaintiff on the trial.  The parties may have
agreed upon the course that was pursued, for the purpose of
giving the defendant all the benefit which he could have de-
rived from a special motion to restore the writ to its former
condition.   It may therefore be proper to consider the case
on the grounds taken at the trial.

Putting the case in the most favorable aspect for the de-
fendant, it amounts to this: an execution, directed in the

Walden
v.
Davison

body of the writ to the sheriff of *Cattaraugus,* was sent to the sheriff of *Allegany;* the defendant's deputy received the writ, retained it, acted upon it, and finally returned it satisfied. Can the defendant now protect himself against the plaintiff's claim for the money by insisting on the misdirection of the writ? *Wilson* treated the execution as properly in his hands, as deputy sheriff, and indorsed upon it the time it was received. He was afterwards authorized by the plaintiff to amend the writ and proceed on it, or to lay it aside and make use of a second execution which was placed in his hands. He did not amend the first writ, but he retained it in his hands and acted under it. He gave two receipts to *Van Campen,* the debtor, one of $200, and the other for $89, for so much money received on account of the execution then in his hands. These receipts were not given in reference to the second execution, for that was afterwards returned *nulla bona;* and a further proof that the deputy acted under the first writ, will be found in the fact that he finally returned it *satisfied. Van Campen,* the debtor, was examined as a witness for the defendant; but no attempt was made to show that the deputy did not act under the execution. The fact that he did treat it as valid process may therefore be regarded as conclusively proved. If the execution had fallen into the hands of the sheriff instead of the deputy, it can hardly be doubted that his return of satisfaction upon the writ would have been conclusive evidence against him, in an action to recover the money. It has been repeatedly decided, and is a well established doctrine, that the sheriff cannot take advantage of mere irregularities in the process delivered to him to be executed. In the case of *The People* v. *Dunning,* 1 *Wendell,* 16, the execution had no *seal,* and yet the sheriff was held liable on attachment for the money collected under it. If in that case he had *refused to act,* on the ground that the process was defective on its face, and a levy might subject him to an action, it would have presented a different question: but having acted, he could not set up the irregularity. In the case under consideration, if the execution had been delivered to the defendant, the misdirection might have been a sufficient excuse for omitting to levy and collect; but if he proceeded on the execution and treated

it as valid process, it would then be too late for him to make the objection, and refuse to answer to the creditor for the money. *Jones* v. *Cook*, 1 *Cowen*, 309. The mistake in the direction of the execution did not render it absolutely void, and the court would at any time have ordered an amendment, if that had been necessary for the protection of the officer. Can it make any difference that the deputy, instead of the sheriff, acted under the writ, and treated it as valid process? I think not. In the case of *The People* v. *Dunning*, already referred to, the execution was delivered to the deputy, and the deputy having treated the writ as valid, the sheriff was held liable to the creditor for the money. The sheriff objected in that case that the sureties of the deputy would not be responsible to him for the money; but the court said that was a mistake—the money having been received by the deputy *colore officii*, his sureties were liable.

In ascertaining whether the sheriff is answerable for the acts of his deputy, the question is, whether the latter did an official, or a mere personal act. If the act is personal only, and does not relate to his duty as an officer, he is not the agent or servant of the sheriff; but if he execute process under color or by virtue of his office, the sheriff is answerable for the consequences. It is not necessary to charge him, that the act of the deputy should in all cases be lawful, or one which he might rightfully do under the process. If it were so, the sheriff would not be liable where the deputy takes the property of some other person than the judgment debtor. Many other cases might be put, where the sheriff is answerable for the wrongful acts of his deputy. Where he acts by virtue of his office, third persons have a right to regard him as the mere servant or agent of another, and resort to the principal for the redress of any injury they may sustain. It would be a dangerous doctrine to hold that the sheriff may, for his own convenience, depute persons to discharge the duties of his office, and yet not be answerable to third persons for their misconduct. 7 *Johns. R.* 35. 1 *Mass. R.* 530. 4 *id.* 63. 1 *Pick.* 271.

Where the plaintiff in an execution interferes with a deputy, and directs him to proceed in some other way than that prescribed by law, the officer then becomes the agent of the party,

and the sheriff is no longer answerable for his acts. 6 *Cowen*, 467. 7 *id.* 739. But this case does not fall within that principle. The plaintiff authorized the deputy to amend the first writ, lay it aside, or use it as he might think proper ; and if the sheriff had been sued for any error of the deputy in that matter, he might well have said that the officer was not acting under his authority, but as the agent of the party. But here the plaintiff only told the deputy that he might omit to execute the process, if he thought proper—a course which in this case he might have pursued without any such instructions. The officer went on and executed the writ in the mode prescribed by law ; and having done so, the fact that he might have pursued a different course, with the plaintiff's consent, cannot, I think, alter the legal liability of his principal. The whole question comes back to this : The deputy received process which he might have refused to execute. Not being absolutely void, it was capable of amendment, and the officer might proceed under it, if he thought proper. He did proceed, and treated it as valid process. His election to go on with the execution was not controlled by the plaintiff. In doing so, he was not the agent of the party, but the servant of the sheriff. When he received the money and returned the writ, he did it by virtue of his office, and the defendant is answerable as his principal.

As the return was conclusive evidence of the satisfaction of the execution, the charge of the judge was sufficiently favorable to the defendant. Placing the plaintiff's right to recover on this ground, the subordinate questions raised on the trial need not be considered.

When these parties were before the court, after the first trial, it was understood that the execution had been sent to the sheriff of the *wrong* county ; but, as I understand the case made on the last trial, the execution was not only intended for, but sent to the sheriff of *Allegany*, and the misdirection in the body of the writ to the sheriff of *Cattaraugus* happened through the mistake of the plaintiff's clerk. As the writ was intended for and delivered to the sheriff of *Allegany*, and he has executed the process without any objection on the part of the judgment debtor, he cannot be allowed to with-

hold the money from the judgment creditor. If the sheriff was ever liable to *Van Campen* as a wrong-doer, he is now perfectly protected by the amendment of the execution.

New trial denied.