## Case No. 8,122.

### The LAURENS.

[1 Abb. Adm. 508;[1] 7 N. Y. Leg. Obs. 174.]

District Court, S. D. New York. April, 1849.

MARSHAL—MALFEASANCE—LIABILITY FOR ACTS OF DEPUTY—FOREIGN COIN—DEPOSIT IN BANK.

1. The deputy-marshal is an officer of the district court, amenable to its jurisdiction for malfeasance in office; and this jurisdiction may be exercised by summary order or attachment for contempt.

2. The marshal is personally answerable (under Sup. Ct. Rules, 41, and Dist. Ct. Rules, 158) for any failure to pay moneys attached by him, into court forthwith; and the responsibility of the deputy is no less stringent than that of the marshal.

3. The resignation of office by an officer of the court, does not oust the court of jurisdiction to proceed against him by attachment for contempt for any acts of misconduct committed by him while in office.

4. Where specie, although consisting of foreign coin, is attached under process of the court, the officer is bound to pay it into court as money; and it is not to be considered as cargo merely.

5. Under the act of April 18, 1814 (3 Stat. 127), which directs that moneys received by officers of the United States courts shall be deposited in bank, &c.,—the court is authorized to require its officers to pay moneys received by them into court, to be deposited in bank by the clerks of the court.

This is a libel in rem filed by the United States against the bark Laurens, and $20,000 in specie on board her, alleged to be forfeited to the United States for being employed in the slave-trade. Former proceedings in the cause are reported in [Case No. 8,121]. An application was now made for an order upon Eli Moore, United States marshal for the district, that he forthwith pay into court the sum of $20,000 in specie, attached on board the bark Laurens, proceeded against by the United States on a charge of having been engaged in the slave-trade, and which specie, with other effects, had been taken into custody by William H. Peck and others, specially deputed by the marshal to execute the process of the court; or that a peremptory attachment issue. A similar motion was made as to William H. Peck, the deputy, who was exclusively and directly identified with the custody and withholding of the specie.

J. Prescott Hall, U. S. Dist. Atty., for the motion.

Francis B. Cutting, opposed.

BETTS, District Judge. An order was granted by the court on the 21st inst., on motion of the United States attorney, that the marshal of this district forthwith pay into court the sum of money attached by him in the above-entitled cause. The hearing of the matter was deferred at the instance of the marshal until yesterday.

The order of the court was served on William H. Peck, chief deputy of the marshal, and concurrently with the motion against the marshal, the district attorney moves for an order that the said deputy pay the aforesaid money into court, or that an attachment issue against him. It is objected on the part of the marshal, that no proof is made of personal service on him of the order of court, and on the part of the deputy, that no order has been granted directing him personally to pay the money into court.

In order to lay a foundation for a peremptory attachment, it is incumbent on the applicant to show that his preliminary proceedings have all been strictly correct. U. S. v. Caldwell [Case No. 14,708]. But the same rigor is not necessary to obtain an attachment to bring a party before the court to answer upon matters touching a civil suit. In such cases, the first proceedings may be by order that the accused party show cause why he should not be punished for the alleged misconduct; or an attachment may be issued to bring him before the court to answer for the

---

[1] [Reported by Abbott Brothers.]

misconduct (2 Rev. St. 536, § 6), and the practice of the state court governs this court when not otherwise regulated by its own specific rules (Cir. Ct. Rules, 102; Dist. Ct. Rules, 340).

The material question is, whether a proper cause is shown for the interposition of the court against the marshal or deputy, by process of attachment in the first instance, or by an order that they show cause why an attachment for contempt of court, because of misconduct in office, shall not issue against them. Thus far the cases of the marshal and deputy have been considered as depending upon a principle common to both.

Upon the facts brought out, however, by the depositions read in court, it seems proper to separate them at this point, and to dispose of each case on its special circumstances. It appears that a monition and attachment against the bark Laurens, her tackle and apparel, furniture, appurtenances, guns, and goods and effects found on board, and 20,000 in specie, was delivered to the marshal on March 15, 1848. He deputed William H. Peck, J. S. Smith, Joseph Thompson, or either of them, to execute the process, and the same day it was served by Smith and Thompson, by the arrest of the vessel and the specie. The specie was taken by Mr. Thompson to the Mechanics' Banking Association in this city, and left there subject to the order of Eli Moore, the marshal, and as Mr. Thompson deposes, on special deposit, according to his understanding.

The deputy, Peck, states in his affidavit, that the specie attached was estimated at $18,992, and no more; consisting of $1,000 in silver and several kegs of doubloons, and half doubloons,—gold pieces of a foreign currency. The $1,000 in silver were afterward by his direction placed to his credit, by the cashier, and the gold coin was sold and the proceeds also passed to his credit in the bank. He says he has disbursed a portion of these moneys for the official services of the office, and that the total sum he has received in his official capacity, including these moneys, amounts to $133,000, or thereabouts, and that he has disbursed and expended for and on behalf of the marshal, during that period, the sum of $126,000, or thereabouts, leaving about $7,000 in his hands, which he states he is ready to account for and pay over to the marshal. He farther says he resigned his office of deputy marshal on the 23d inst. The resignation was made after these proceedings were initiated and notice thereof had been served on him.

On these facts the counsel for Mr. Peck takes the following objections to the competency of the court to enforce an order, or issue an attachment against him: That if the moneys in the cause came to the hands of the deputy, they were in judgment of the law received by the marshal, and the deputy is not answerable for them by summary order of the court, nor by suit at law. That

the remedy of the parties interested in the moneys must be taken against the marshal alone. That a deputy marshal is not an officer of the court amenable to the authority of the court by way of attachment for misconduct or malversation in his office. That Mr. Peck is now no longer deputy marshal, and therefore in no way under the supervisory authority of the court in respect to his transactions when in office. A subsidiary exception is taken that the specie cannot be regarded as money in the hands of the marshal, but only as cargo in his custody for safe keeping until the final decision and disposition of the cause, and accordingly not subject to be brought into court. A farther point was taken under the terms of the act of congress of March 3, 1817, that an attachment cannot be awarded for not paying the money into court, but only on the refusal or neglect of the officer to pay it into an incorporated bank of the state to the credit of the court.

1. The main defence against this proceeding was placed on the first position, that a deputy marshal is not an officer of the court, in such a sense as to render him directly amenable to its supervision, and subject to attachment for not paying over money received by him virtute officii.

Whatever may be the rule at common law in respect to the direct liability of deputy sheriffs to suitors for moneys collected by process of court, it seems to me there is no ground for question under the act of congress of March 3, 1817 (3 Stat. 395), that a deputy marshal is subject to the same summary remedy in respect to moneys held by him officially that the marshal is himself.

The United States circuit and district courts are directed by section 1 of the act, to cause all moneys, being subject to their order, to be deposited in bank; and section 2 provides that all moneys which shall be received by the officers thereof in causes pending in court, shall be immediately deposited in bank to the name and credit of the court; and section 4 directs that, if any clerk of such court, or officer thereof, having received any such moneys as aforesaid, shall refuse or neglect to obey the order of such court for depositing the same as aforesaid, such clerk or other officer shall be forthwith proceeded against by attachment for contempt. 3 Stat. 395. If the court were called upon to expound the language of the statute for the first time, there would seem to be no reasonable ground for not giving it its full, plain, and natural import, and applying it to every grade of officers carrying into execution the powers of the courts, and receiving moneys under their process or by their direction.

Chief Justice Marshall clearly considered the law as embracing deputy marshals; for in U. S. v. Man [Case No. 15,716], he awarded an attachment against a deputy marshal to compel the payment of money into court,

collected on execution. No question was raised in that case as to the just liability of that officer to this form of procedure. This was in 1822. In 1844 the point was raised in the Sixth circuit, and Mr. Justice McLean, on a careful consideration of the statute, decided that the deputy marshal is an officer of the court, and subject to its power as such, and that he may be compelled by attachment to pay over money collected by him virtute officii. The judge remarked that it would be disreputable to the court and to the institutions of justice, if, in such case, the court could not afford a summary remedy against one of its officers. In that case, too, the deputy had received a portion of the money when he had no authority to receive it, the execution having been returned; and the court held he was responsible for it, although the marshal was not. Bagley v. Gates [Id. 725].

If the money had come properly, in the course of his official duty, into the hands of the deputy, the marshal would immediately be liable for it. Judge McLean holds that the deputy is no less so for that cause. And it seems to be the rule in Massachusetts, not only that the sheriff is liable for the acts of his deputy done colore officii, but that such liability is consequent upon that of the deputy for the same acts. In Knowlton v. Bartlett, 1 Pick. 275, a deputy sheriff attached money, after the process was functus officio, and embezzled it. The court held the sheriff liable, because the act was done under color of office. The same doctrines are declared by Parsons, C. J., in Marshall v. Hosmer, 4 Mass. 63, and Bond v. Ward, 7 Mass. 127; and all the cases go upon the assumption of the personal liability of the deputy for the acts for which the sheriff was made responsible. In South Carolina the sheriff has been held liable to attachment for moneys paid a clerk in his office, embezzled by the clerk afterwards. Abercrombie v. Marshall, 2 Bay, 90; Carlin v. Kerr, Id. 112.

Independent of the statute referred to, the courts of the United States, under their inherent powers and their right to regulate their own process. possess ample authority to prescribe rules in relation to the collection and disposition of moneys obtained under their process or order. and to compel the observance of such rules by attachment. Bac. Abr. tit. "Attachment," A.; Com. Dig. (Day's Ed.) tit. "Attachment for Contempt of Court," note 1; 3 Durnf. & E. [3 Term R.] 351; 2 Rev. St. 543, § 1. Such rules are prescribed by the supreme court and by this court.

In my opinion the deputy marshal is an officer of this court, amenable to its jurisdiction for malfeasance in office by summary order or attachment for contempt. The marshal would be personally answerable under the terms of rule 41 of the supreme court, and of rule 158 of this court, for failing to pay moneys attached by him forthwith into court; and the responsibility of the deputy is no less stringent. So, also, under the practice of the supreme court of this state, the sheriff is subject to attachment for not paying moneys collected by him on process to the party, or into court, although no demand is made on him therefor. Brewster v. Van Ness, 18 Johns. 133.

2. It is earnestly contended that the resignation of his office by the deputy, on the 23d inst., ousts the jurisdiction of the court over him. This is upon the assumption that the authority of the court, by attachment, cannot be exercised over any one except he be at the time an officer of the court. This doctrine is correct as to executory acts. The court could have no power to compel the deputy to resume his office, or to proceed hereafter in the execution of his duties. But this principle does not touch that of the rightful authority of the court in respect to acts and omissions of its officers while acting as officers. The power of the court to afford a remedy against sheriffs by attachment, after they leave office. for malversation or neglect of duty in office, is one constantly exercised, and has never been questioned.

In February term, 1810, the supreme court of New York awarded an attachment against a late sheriff, for not returning a fi. fa. delivered to one of his deputies in 1797, to bring him into court to answer on oath to interrogatories. Brockway v. Wilbur, 5 Johns. 356. He was afterwards discharged on account of laches of the party prosecuting, the process having been delivered to a deputy more than fourteen years previously. People v. Gilleland, 7 Johns. 555. Equally direct are the cases of Brewster v. Van Ness, 18 Johns. 333, People v. Brown, 6 Cow. 41, and People v. Everest, 4 Hill, 71. It is presumed the argument would not be advanced, that the marshal, in this case, if the money in question came into his hands, could exempt himself from these summary proceedings by resigning his office. The deputy, as an officer of the court, stands on the same footing. He is compellable to answer to the court for abuse of its process, or other contempt of court, whilst acting as its officer. The proceeding by attachment does not affect him as an officer, but individually. It is not against him in the character of one now acting in office, but to compel him to complete and carry out his official duties in doing something he had neglected and omitted, and because of malversation, whilst an officer, in retaining in his hands moneys received by him when in office, and by color of his office. The law empowers the court to act directly upon the office of a deputy marshal, for misconduct committed by him in office, by removing him.[2] [1 Stat. 86, § 27.] This court had drawn an order, in execution of that power. removing this deputy

---

[2] [From 7 N. Y. Leg. Obs. 174.]

from office, when informed of his resignation; but that mode of punishment would in no way affect the civil rights and remedies of suitors against him, for embezzling their moneys collected by him, nor the power of the court to inflict punishment by way of fine on him for such malconduct.

3. I cannot assent to the doctrine set up in the third point raised in behalf of the deputy, that this specie was merely cargo, which he is not bound to bring into court or deposit in bank. The foreign coins mentioned in the depositions, comprising the large sum in question, were all legal currency under our laws. They were money, the same as coin of the United States mint. By the laws of this state, the sheriff can levy on money or bank bills, and must return and pay them as so much money collected. 2 Rev. St. 290. Allen, Sher. 159. The case of Knowlton v. Bartlett, 1 Pick. 271, was that of money levied on and embezzled by the deputy sheriff. The process in his hands was a mesne attachment, the same in effect as the attachment and monition issued in this cause. There was no necessity for changing the character of the property taken. It was already money; and the officer was bound to pay it into court as such.

4. It is contended that this proceeding is not supported by the act of congress of 1817, as it demands the payment of the moneys into court, whilst the statute directs that they shall be deposited in an incorporated bank of the state to the credit of the court. This is only a different phraseology for the same act and the same result. The purport and object of the motion is to place the moneys under control of the court for the protection of the parties litigant; and the order might be modified so as to conform to the language of the statute, if that were necessary. The act of April 18, 1814 (3 Stat. 127), directed the deposit of moneys paid into court, in an incorporated bank, to be designated by the court. The act of March 3, 1817 (3 Stat. 395), appointed the branches of the United States Bank such depositaries, still leaving it to the courts to designate state banks when no branch of the United States Bank was convenient. On the termination of the charter of the United States Bank, this court designated incorporated banks in this city for that purpose. The Bank of the State of New York, the Manhattan Bank, and the Bank of New York, are the only ones appointed. Section 2 of the act of 1817 requires the moneys to be deposited in the name and to the credit of the court. The marshal may, undoubtedly, if he elects so to do, proceed directly to the appointed bank and place money collected by him in deposit in that form, provided the bank will accept it from him. But it is manifest that an orderly and accurate method of conducting this business, and keeping the accounts so that all parties in interest can acquire the information they need in respect to deposits, and so that the funds shall be emphatically in public keeping, is indispensable. The courts in this district require, to that end, that the moneys be paid into court, to be deposited by the clerks, under the title of the cause to which they appertain. The court, as such, keeps no bank account, and there is no general deposit of moneys to its credit. Every deposit is specific and special, to the credit of the cause out of which the money arises. No part of such money can be drawn out but by order of the court, entered on the minutes, signed by the judge, and then checked for by the clerk. Those minutes and records are open to inspection by all persons in interest. If, then, the money is, in the first instance, carried by the marshal to the bank, it will be necessary to re-deposit it under the order of the court, in the manner provided for keeping the accounts, and for its safe and correct disbursement.

Upon the law of the case, I am clearly of the opinion that the United States attorney is entitled to compel Peck, the deputy, to pay the money in question into court, under penalty of attachment for contempt. There is, however, undoubtedly some want of formal steps to entitle him to a peremptory order to that effect. No order has been served personally on Peck which he has disobeyed, and he is not, accordingly, put in a state of contumacy as yet before the court. Sufficient, however, is shown upon his own affidavit to satisfy the court that he was apprised of the proceedings, and to justify an order or an attachment against him, to bring him before the court to answer.

It is accordingly directed, that the United States attorney may take an order on Peck, that he forthwith pay into court the moneys in question; or at his election he may have an attachment to bring Mr. Peck into court to answer interrogatories on the subject-matter.

It is not made to appear upon the proofs submitted to me. that the marshal has personally been guilty of any delinquency. He is answerable for the acts of his deputy done colore officii, People v. Dunning, 1 Wend. 16; Clute v. Goodell [Case No. 2,911], —although without his knowledge or recognition, McIntyre v. Trumbull, 7 Johns. 35; Walden v. Davidson, 15 Wend. 575, and in respect to moneys so collected or taken by the deputy, the party entitled to them can have his remedy by process of attachment against the marshal personally, People v. Brown, 6 Cow. 41.

There is some want of complete formality in this instance, as to the proofs necessary to found a motion for a peremptory attachment; and one for the purpose of bringing the marshal before the court to answer is unnecessary, as he presents his own affidavit and that of Mr. Thompson, showing cause in excuse of himself. The excusatory matter set up will not protect him against an

attachment, unless it appears that Peck obtained possession of the money tortiously and in fraud of the marshal's rights. The court cannot, upon the statements laid before it, imply that Mr. Peck so acquired the money; and the marshal may be compelled to answer on interrogatories, whether the late deputy had not adequate powers in this behalf to take upon himself the possession and control of the money.

As the evidence of the preliminary steps does not entitle the applicant now to a peremptory attachment, and as there does not appear to have been any personal delinquency on the part of the marshal, I shall direct that an order be entered for him to pay the money into court on or before the first day of May next, or that an attachment issue against him. Order accordingly.