3p 155
94   53

## STERLING VS. RIPLEY.

1. EVIDENCE — INTEREST OF WITNESS. — When the question at issue is between the vendee of a debtor in an attachment or execution, and the sheriff seizing property under such process as that of the debtor, but which is claimed by such vendee as a purchaser; the interest of the debtor being equally balanced, he is a competent witness for either party ; but where a question remains between him and his own vendee as to the title to such property, he is not a competent witness for the sheriff to impeach it.

2. SAME. — The vendor of property sold by him and seized for his debts is as a general rule a competent witness for the vendee in a suit brought by him on account of seizure; but not for the levying creditor who offers him upon the assumed ground of fraud in the sale; and where it appeared that such vendor had transferred by indorsement upon which he was liable, notes given for the purchase price, which exceeded the amount the property sold for under the process: *Held*, that he was not, on the ground of interest, a competent witness for his vendee.

3. INSTRUCTIONS TO JURY — ERROR. — In passing upon instructions given to a jury, their correctness must be determined upon taking them together as a whole, and not by detached and disconnected parts.

4. SAME. — Where an instruction is asked which is good in part and bad in part, the court need not alter or modify it, but may refuse it altogether.

5. ATTACHMENT — ORDER OF SALE. — An order made for the sale of perishable property in an attachment suit, protects the officer making the sale, but cannot affect the question of the legality of the seizure.

6. FRAUD. — Consanguinity in and of itself is not a badge of fraud, but with other circumstances, is a proper matter to submit to the jury in determining the question of fraud.

7. SAME — SALE. — In order to avoid a sale on the ground that it was fraudulent as against creditors, it is necessary to connect both the vendee and the vendor in the fraudulent design.

8. SAME. — Under a given state of facts, as that there was no change of possession, the law raises a presumption that the sale was fraudulent, which is conclusive, unless it is made to appear that the sale was made in good faith and without any fraudulent intent, in which case the the presumption of fraud is rebutted; and whether it is so rebutted is a question of fact for the jury.

(3 Chand., 166.)

ERROR to the Circuit Court for *Iowa* county.

*Ripley* brought trespass against *Sterling* for taking and carrying away a quantity of goods and merchandise. The defendant *Sterling* pleaded in justification that he was at the time, etc., sheriff of Iowa county, and took said property by virtue of an attachment directed to him as such sheriff issued out of the circuit court for Iowa county, in a suit wherein C. H. & H. P. Corwith were plaintiffs, and William J. Hammond and Ephraim P. Vaughan were defendants, commanding him to attach the

property of said Hammond and Vaughan, or said Hammond; that at the time, etc., the said goods, etc., were the goods and chattels of the said Hammond and Vaughan, or of the said Hammond, and that he, by virtue of said writ, and his duty as such sheriff, seized the same, etc., and issue was joined on this plea. At the trial the plaintiff proposed said Wm. J. Hammond as a witness in his behalf, and the defendant objected to his competency on the ground of interest, and in support of his objection, offered to show, and was allowed to prove, that said Hammond was one of the defendants in the attachment under which the defendant justified, and by virtue of which he seized the property in question as stated in his plea.; that Hammond had sold the goods in question to the plaintiff, and that part of the notes and securities which he had received of the plaintiff therefor in payment, or alleged payment, were still outstanding and unpaid, one of which notes, to the amount of about $500, he had indorsed to B. H. Campbell, and upon which judgment had been obtained; that the said Corwiths, in and by virtue of the attachment proceedings under which the goods were so seized, had procured an order for the sale of the same as perishable property pending the suit; that the money arising from the sale thereof, under such order, being about $601, was received by the defendant, and he had under an order of the court paid the same to the Corwiths upon the judgment which they recovered against Hammond and Vaughan in the attachment suit, and that the judgment therein had been to that extent discharged. But the court overruled the objections to the competency of Hammond as a witness, and allowed him to testify on behalf of the plaintiff. Several instructions were asked by the defendant, and refused, and others were given to which he excepted. The plaintiff had a verdict for $1,200, upon which judgment was entered and the defendant brought a writ of error.

*Chas. & F. J. Dunn*, for plaintiff in error, argued that Hammond was not, on account of his interest in the event of the

suit, a competent witness for his vendee the plaintiff, and cited 11 Wend., 83; 9 Johns., 337; 19 id., 231; 3 Cowen, 166; 16 Wend., 523; 1 Hill, 438; 15 Mass., 110, 244; 20 Johns., 6; 9 Pick., 322; 13 Mass., 199; 17 id., 197; 13 id., 379; 6 Johns., 5; 6 Greenl., 416; 4 Mass., 653.

*Cothren & Crawford*, for defendant in error, contended that the witness Hammond, who was plaintiff's vendor, and a debtor. and defendant in the attachment suit in which the goods were seized, was a competent witness for such vendee to sustain the sale as against the sheriff who seized them on such attachment; that his interest was balanced, and cited *Bland v. Ansley*, 5 Bos. & Pul. 331; *Bailey v. Foster*, 9 Pick., 139, 176; *Ragland v. Wickware*, 4 J. J. Marsh, 530; *Lampton v. Lampton*, 6 Mon., 616; *Rice v. Austin*, 17 Mass., 197; *Alexander v. Mohan*, 11 Johns., 185; 2 Greenl. Ev., 492; *Marshal v. Davis*, 1 Wend., 115; and many other cases; they contended that the sheriff *Sterling* was liable for the tortious acts of his deputy done *colore officio*, and that he was liable whether he directed the seizure or approved of it after it was made or not.

JACKSON, J. *Levi Sterling*, as the sheriff of the county of Iowa, by his deputy Jackson Richardson, seized upon a stock of merchandize in the possession of *Benjamin Ripley*, under and by virtue of a writ of attachment issued from the Iowa county circuit court, in favor of C. H. & H. P. Corwith, against Ephraim P. Vaughan and William J. Hammond.

*Ripley* claiming to be the owner of the goods, as the vendee of Hammond, instituted an action of trespass against the sheriff for taking and carrying away the goods seized under the attachment, and recovered a judgment in his favor, in the Iowa county circuit court, for the sum of twelve hundred dollars, and to reverse this judgment, a writ of error is brought to this court.

Upon the trial of the cause in the circuit court, various legal questions arose, upon which exceptions were taken to the rulings of the circuit judge, as well in relation to the admission of evi-

dence as in refusing to give to the jury the instructions asked for by the defendant's counsel.

*First.* Did the court err in permitting William J. Hammond to be sworn and examined as a witness, in behalf of the plaintiff, after it had been shown, by evidence, *aliunde*, 1. That Hammond was the vendor of *Ripley*.  2. That the goods were seized upon a writ of attachment issued against Hammond and one Ephraim P. Vaughan, at the suit of C. H. & H. P. Corwith; and, 3. That a part of the notes, taken from *Ripley* for the goods, were then outstanding and unpaid; and that one of the notes, amounting to five hundred dollars, had been transferred and indorsed over to one Benjamin H. Campbell, upon which there was an unsatisfied judgment in said court in favor of Campbell, and against the witness Hammond?

It was insisted in the court below, and is contended in this court, that the relation in which Hammond stood towards *Ripley*, his vendee, and the Corwiths, his attaching creditors, rendered him an incompetent witness.

The weight of authority is clearly against this position. Taking into consideration the amount which the goods sold for, an amount exceeding the note transferred to Campbell, it did not appear that Hammond, at the time he was introduced by the plaintiff, and admitted by the court as a witness, had a disqualifying interest.   The case, for aught which then appeared, was the very common one of a vendor being called by his vendee, to testify in a suit against the attaching creditor, or the officer who represents him.   The point in controversy was, as to whether there had been a fraudulent conveyance by the witness, who was also the judgment debtor.

On the competency of such a witness, Mr. GREENLEAF, in his treatise on evidence (2 Greenl. Ev., § 598) remarks: " Where the question is wholly between his own vendee and the attaching creditor, his interest being balanced, he is a competent witness for either party ; but where a question remains between him and his own vendee as to the title, he is not a

competent witness for the sheriff, to impeach it." The author-
ities are numerous in support of this doctrine. 1 Phil. Ev.,
64; 21 Wend., 169; *Gardner v. Tubbs*, 1 Pet., 37–39; *McKenzie
v. Hart*, 3 Fairf., 371–373; *Eldridge v. Wadley*, 9 Pick., 139;
*Bailey v. Foster*, id. 183; *Pierce v. Shephard*, 4 J. J. Marsh,
530–1–2; *Ragland v. Wickware*, 21 Pick., 70; *Buchman v. God-
dard*, 5 Bos. and Pul., 331; *Bland v. Ansley*, 6 Mon., 616.

Nor does this conflict with the general rule of evidence
(2 Greenl. Ev., 467), that the warrantor of title to the prop-
erty, which is in controversy, is generally incompetent as a
witness for his vendee in an action concerning the title. The
doctrine of warranty cannot, with any propriety, be applied to
a case of mutual fraud between the vendor and vendee, on
which ground alone it is sought by the levying creditor to
avoid the sale. 3 Mon., 109–11–12; 21 Wend., 171; *Gard-
ner v. Tubbs*, 1 Fairf., 71; *Smith v. Hubbs*, 2 Cowen & Hill's
Notes, 1523. In cases of mutual fraud, between the vendor
and vendee, courts, as between them, will not interfere to
relieve either party, either by enforcing or annulling the fraud-
ulent contract. 21 Wend., 171; 5 id., 579; 3 Paige, 154; 3
Mon., 109–11–12. The learned authors of Cowen & Hill's
Notes on Phil. Ev., 121–2, after referring to and commenting
upon the leading cases of *Bland v. Ansley*, of *Bailey v. Foster*,
of *Pierce v. Shephard*, and of *Ragland v. Wickware*, adopt this
conclusion, that "the general rule remains to us almost unin-
cumbered by exception, that the vendor is a competent witness
for his vendee, but not so for his levying creditor, who offers
him upon the assumed ground of fraud." There was no error
then, in the first place, in permitting Hammond to be sworn as
a witness. The question then recurs, Did Hammond, subse-
quently, in the course of his testimony, disclose any facts
which should have excluded his testimony from the jury?
Here arises the most important, if not the most difficult point
to determine in the cause. If we were to adopt the rule laid
down in some of the cases, notwithstanding the facts dis-

closed by his testimony, we might hold him a competent witness.

But a majority of the court are of opinion, that after the witness had shown, by his testimony, that he had transferred to Kirkpatrick, two of the notes for five hundred dollars each, received from *Ripley*, as collateral security for the sum of about three hundred dollars, which witness owed Kirkpatrick, such an interest in the event of the suit was then disclosed, as rendered him an incompetent witness; his direct liability on the notes which he had transferred and indorsed over, exceeding in amount, the sum arising from the sale of the goods, which had been applied to the payment of the witness's debt. For this reason, therefore, the court erred in instructing the jury that Hammond was a competent witness; and, on this ground, a new trial must be awarded.

It must be admitted that in many cases, and more especially in cases of this character, the boundary lines between competency and incompetency are so faintly drawn that it often becomes extremely difficult to make any safe application of a general rule; and for this reason the tendency of courts at the present day is to let these questions of interest go rather to the credibility than to the competency of a witness. 4 Denio, 515; 6 Hill, 444. Indeed, it is not improbable that the views so cogently expressed by Lord Chancellor BROUGHAM, on this branch of the law of evidence, may ultimately be adopted by the courts of this country. "The ancient doctrine upon this point," says this great jurist in his masterly speech in the House of Commons, "*on the state of the law*," delivered in 1828, "has of late years been so much restricted by our courts of law, so little is left of the principles on which this objection to competency rested, that, for my own part, I will confess that I cannot see any adequate reason why all witnesses of good fame, that is, all not convicted of an infamous offense, should not be admitted, leaving the question of their credibility, and the weight of their testimony, to the consideration of the jury.

In the case of *Bent v. Baker*, an action against one underwriter of a policy, the court held that another underwriter of the same policy was a competent witness for the defendant, because the verdict could not be evidence in an action against himself, although it was clear that the first action must, in fact, decide both claims.   After that decision, it cannot be said that there is any rational ground for exclusion on account of interest in the event, any more than interest in the question.   The rule thus established has ever since been followed, and now, in all cases, a person is competent, whatever bias he may have from interest, provided the verdict cannot be given in evidence for or against him in another cause; the bias under which he swears being only a circumstance that goes to his credit.   After this, it is in vain to exclude any evidence upon the ground of interest in the event, and the principle should be extended to all interest, direct or indirect."

Although a new trial must be granted in this cause, for the reason which we have stated, yet it may be important, in the disposition of other cases, to pass upon the points raised by the defendant's counsel, and which are embraced, as well in the instructions given, as in those refused by the court to the jury.

With the exception of the instructions given by the court as to the competency of Hammond as a witness, we see no error in the charge of the court.   The whole charge of a court must be taken together, and not decided by detached and disconnected parts of it.

The rules of law laid down by the circuit judge, as applicable to the case, are fully sustained by the authorities.

*Second.* Did the court err in refusing to give the instructions asked for by defendant's counsel ?

Now, these rules are to be applied to the refusal of a court to give the instructions asked for: 1. A court is not bound to instruct a jury upon an abstract point or question of law, not raised by the testimony of a party in the case. 2. Where an

instruction is asked for, which is good in part and bad in part, a court need not alter or modify such instruction, but may re fuse it altogether. 5 Mon., 280–2; 1 Cranch, 309–18; 4 Peters, 80–1; 1 id., 328; 2 Cow. & Hill's Notes, 790. A judge may, it is true, modify or qualify an instruction, and it is very proper to do so, in order to make it conform to the law of the case. But it is not error to neglect or refuse to do so, if the instruction, as originally asked for, cannot be given. The first instruction asked for by defendant's counsel, although presented in the shape of an abstract proposition, is not correct. It must, of course, refer to the tortious acts of a deputy, done under color of office. For such acts the sheriff is clearly liable, as well at common law, as under the statute. 2 Greenl. Ev., sec. 580; 2 Esp., 507; 2 Phillips' Ev., 376; 1 Mass., 530; 12 id., 449; 15 Wend., 575; R. S., ch. 10, sec. 81.

The second instruction was substantially given as asked. The third instruction asked for was erroneous. Whether the sheriff acted under the direction of Corwith, or not, does not affect his legal liability.

The fourth instruction asked for could not be given, for the reason that the order of the court, made under the statute, authorizing a sale of the perishable property attached, could only protect the officer, so far as the sale, under the order, was concerned, but could not affect the original taking, or the question as to the right of property in the goods attached.

The fifth instruction was properly refused, for the reason that the question of the competency of a witness, by reason of interest in the event of the suit, is a question of law to be determined by the court. 2 Greenl. Ev., 425; 1 Phillips' Ev., 18; 2 Smith's Lead. Cases, 102; Note to case of *Bent v. Baker*, 1 Watts & Serg., 229; 12 Conn., 392; 8 Pick., 390; 5 Johns., 256; 6 Hill, 534.

The sixth instruction asked for is entirely too broad. Consanguinity is certainly not in itself a badge of fraud. It might, under certain circumstances, be a proper matter to submit to a

jury, in connection with other facts, in order to enable them to determine the question of fraud. But in itself, it could not, by any known rule of law, be considered a badge of fraud. . 4 Hill, 296.

The seventh instruction is liable to the same objection.

The eighth instruction, under the facts in the case, could not be given without some modification or qualification, and was therefore properly refused.

The tenth instruction could not be given for the reason that the plaintiff was not restricted to the action of trover, if it would lie. He was entitled to his action of trespass, if he chose to pursue it. 17 Mass., 244.

The eleventh instruction could not be given for the reason, that in order to avoid the sale on the ground of fraud, as against creditors, it was necessary to connect both Hammond and Ripley, with fraudulent design. 2 Met., 104; 14 Mass., 245; 9 Conn., 135; 17 Pick., 453.

In *Marden v. Babcock and another*, 2 Met., 104, Chief Justice SHAW, in delivering the opinion of the court, says: "To avoid a conveyance as fraudulent against creditors, the intent to defraud, delay or defeat, must be known and entertained by both parties." This instruction assumes that because certain facts might, with reasonable care and caution on his part, have been known to *Ripley*, a conclusive case of fraud is established. The jury might have been told that if they believed from the evidence that Hammond made the sale in order to hinder and delay his creditors, and that *Ripley* had knowledge of, and participated in that design, then that sale was fraudulent and void as against creditors, and their verdict must be for the defendant.

The twelfth instruction could not be given in the form and in the language in which it was asked. Under a given state of facts the law raises a presumption of fraud, as where there is no change of possession of the goods sold. And while the presumption of fraud which the statute raises in such a case

becomes conclusive, unless good faith and absence of intent to defraud be made to appear, yet where it is shown that the sale or assignment thus sought to be impeached was made in good faith, and without any fraudulent intent, then the presumption of fraud raised by the statute is rebutted. R. S., ch. 76, § 5. But our statute further declares in ch. 77, § 4, relating to fraudulent conveyances and contracts, that "the question of fraudulent intent in all cases arising under the provisions of this title, shall be deemed a question of *fact*, and not of law." This provision of our statute is copied from the revised statutes of New York. The conflict of decision, both in the courts of England and in this country, under this branch of the statutes of frauds, from the time of *Twyne's* case in the reign of Elizabeth, down to 1830, induced, as is well known, the legislature of New York to incorporate this provision into its revised statutes in order to settle the law in that state on this subject.

This provision of the statute is too clear and unequivocal in its terms to admit of any doubt or uncertainty in its interpretation. And if, for a few years after its enactment in New York there was some conflict in the decisions of the courts of that state in applying this provision, that conflict has finally yielded to the clear and positive terms of the statute itself; and the decisions of the courts of that state are now in harmony with and in conformity to it. 23 Wend., 653; *Smith v. Hoe & Acker*, 4 Hill, 272; *Hanford v. Archer*, 6 id., 436; *Vance v. Phillips*, id., 442.

Although we discover no error in the refusal of the circuit judge to give the instructions asked for by the defendant's counsel, yet for the reason already assigned, the judgment of the court below must be reversed.

Judgment reversed, and a new trial granted, with costs.