MORRIS F. JAMES, Respondent, *v.* SHUBAEL R. GURLEY, late Sheriff, etc., Appellant.

Where a deputy sheriff, after he had returned an execution *nulla bona*, with the consent of the plaintiff's attorney and the county clerk, procured the same from the clerk's office, erased the return, and by virtue thereof levied upon and sold property,—*Held*, that the execution was irregular, but not void, and that the deputy having treated it as valid process, neither he nor his principal could refuse to answer for the money collected thereon. (GRAY, C., dissenting.)

(Argued May 7, 1871; decided September term, 1871.)

APPEAL from judgment of the General Term of the Supreme Court in the fourth district, affirming a judgment in favor of the plaintiff, entered upon the decision of the court on a trial without a jury.

The action was brought against the defendant, as sheriff of the county of St. Lawrence, to recover damages for not returning certain executions, and not paying over moneys collected thereon.

The judge before whom the cause was tried found the following facts: From January 1, 1859, to December 31, 1861, the defendant was sheriff of the county of St. Lawrence, and Joel Houghton was one of his deputies. On the 24th of October, 1860, the plaintiff, Morris F. James, recovered a judgment in the Supreme Court against Thomas B. James for $6,224.49, which was duly docketed and execution issued thereon on the 27th day of October, 1860, and delivered to said Houghton as deputy sheriff, and on the same day the

deputy made a levy on a store of goods belonging to the defendant therein, and upon such execution the deputy received eighty dollars in cash; and on the 29th day of October, 1860, the said Thomas B. James made a general assignment to D. Magone, Jr., for the benefit of creditors, and by virtue thereof Magone entered into the possession of said store of goods, subject to said levy.

On the 7th day of December, 1860, Magone, as assignee, sold the store of goods to Morris F. James, the plaintiff, and, among other considerations, in payment of said judgment; and afterward the said Morris F. James told the deputy sheriff to let the goods in the store stand, and do nothing further with them until instructed; and no further instructions were given, and no further act done under said execution by said deputy.

On the 22d of November, 1860, a judgment was recovered by Robinson & Parsons against Thomas B. James for $1,159.79, and on the 23d of November, 1860, execution was duly issued thereon, and delivered to said Houghton as deputy sheriff. On the 13th December, 1860, said deputy returned said execution *nulla bona*, and filed the same in the office of the clerk of St. Lawrence county, and afterward, with the assent of the plaintiff's attorney, procured the execution from the clerk's office, erased his return and the filing therefrom, and then, by virtue of said execution, took possession of and removed a quantity of goods then in said store formerly occupied by Thomas B. James, and owned by him, but then in possession of the plaintiff Morris F. James, and on the 29th of April, 1861, sold the same at sheriff's sale for a sum sufficient to pay said execution, with interest and expenses of sale, and that but $273.50 of the proceeds of the sale was received by the attorney in said execution, and the remainder by the said deputy, and that has not been paid over, and, although demanded, has been refused.

On the 4th day of June, 1863, another return *nulla bona* was made by said deputy on said execution, and filed. The amount due on said execution, August 13, 1864, was $1,132.92.

Statement of case.

On the 22d January, 1864, Robinson & Parsons sold and assigned to the plaintiff, Morris F. James, the judgment in their favor against Thomas B. James.

From these facts the judge concluded that the action was properly brought against the defendant, as late sheriff; and that the plaintiff was entitled to recover $1,132.92 and costs.

*John H. Reynolds* for appellant. An officer, without process, is no officer in the case in which he assumes to act. (*Commonwealth* v. *Kenard*, 8 Peck., 133.) The execution, with return filed, all its force and vitality as a process is spent. (*Champenau* v. *White*, 1 Wend., 92; *Waldron* v. *Davison*, 15 id., 575; Dalton on Sheriffs, 34; *Clark* v. *Lyman*, 10 Pick., 47 id., 169; *Symond* v. *Catlin*, 2 Caines, 61.) The mere taking it from the clerk's office imposed no official duty upon the deputy. (*Ex parte Read*, 4 Hill, 672; *Waldron* v. *Davidson*, 15 Wend., 575; *Moreton* v. *Moreton*, 5 Barb., 296.) The sheriff is not responsible for the acts of the deputy, unless done in the time of official duty. (*Gorham* v. *Gale*, 7 Cow., 739; *People* v. *Schuyler*, 5 Barb., 166.) The deputy, in making sale, did not act by virtue of his office; the return made is conclusive. (Dalton on Sheriffs, 134; *Clarke* v. *Lyman*, 17 Peck., 47, 169.) The execution could not be taken from the files without the order of the court. (*Barker* v. *Berminger*, 14 N. Y., 278.) His act in doing so and subsequent proceedings, were as the agent of the plaintiff and not on behalf of the sheriff. (*Moulton* v. *Morton*, 8 Barb. R., 286; *Gorham* v. *Gale*, 7 Cow. R., 739; *Corning* v. *Sutherland*, 3 Hill, 552.)

*L. Hasbroock, Jr.*, for respondent. If there was anything wrong in taking the execution from the file and proceeding under it, it amounted to no more than a mere irregularity, and of that the sheriff cannot take advantage. (*Kimball* v. *Munger*, 2 Hill, 365; *Berry* v. *Riley*, 2 Barb., 307; *Smith* v. *McGowan*, 3 Barb., 405; *Mickles* v. *Tousley*, 1 Cow., 114; *Wolden* v. *Davidson*, 15 Wend., 579; *People* v. *Dunning*, 1 Wend., 16.)

EARL, C.　After the deputy sheriff Houghton had returned the execution in the case of *Robinson & Parsons* v. *Thomas B. James* to the clerk's office, by the consent of the attorney for the plaintiffs therein and of the county clerk, he procured the same from the clerk's office and erased therefrom the return he had made thereon.　He then made the levy and sale, and realized the money recovered in this action.　He levied upon and sold the property, claiming to act as deputy sheriff.

This execution was not absolutely void in the hands of the deputy.　It was still process of the court, and was merely irregular.　The court, upon application of the deputy sheriff, could have authorized its withdrawal from the clerk's office and the cancellation of the return and filing, and it would then have been valid and regular process in his hands.　(*Barker* v. *Bininger*, 14 N. Y., 271.)　And even after the second return of this process the court could, *nunc pro tunc*, have canceled the first return and filing, and thus validated the other proceedings under the execution.　All this shows that the process was not absolutely void.　If it was, the court could not validate it.

Hence, the deputy sheriff realized this money upon process simply irregular; and this being so, the defendant, as sheriff, is liable for it.　In *The People* v. *Dunning* (1 Wend., 16), a deputy sheriff collected money upon an execution which had been issued without seal.　The deputy kept the money and was insolvent.　The court say : "The only question is, whether the precess is void or erroneous?　The sheriff supposed it void, and that the sureties of the deputy were not responsible to him for the money received on the execution. This is a mistake.　The process was erroneous and not void, and, therefore, amendable; and the money having been received by the deputy, *colore officii*, his sureties are liable, and the sheriff is responsible to the plaintiff.　The party not having applied to set aside the execution, the sheriff cannot avail himself of any defects in it, and must pay the money or stand committed."　In *Walden* v. *Davison* (15 Wend., 575)

the point decided as embodied in the headnote is as follows: "Where the deputy of a sheriff receives an execution commanding, not his principal, but the sheriff of another county, to make the money for which the process issues, the deputy may refuse to execute the writ; but if he does proceed and collect the money, having become possessed of it under color or by virtue of his office, his principal is liable to the plaintiff, for the money thus collected, in an action for money had and received. The execution in such case being avoidable merely, is amendable." The execution, in the body of it, commanded the sheriff of Cattaraugus instead of the sheriff of Allegany, of which Davidson was the sheriff.

In this case the deputy sheriff could have left the execution in the clerk's office and have stood upon the return he had made, and even after he had got it back from the clerk's office he could have refused to have acted under it on the ground that it would not protect him as against the defendant in the execution. But having taken the execution and acted upon it, he cannot now set up its irregularity. Having treated it as valid process, neither he nor his principal can refuse to answer for the money.

It is not true, as claimed by the learned counsel for the appellant, that a sheriff is not liable for acts of his deputy done by *color* of his office merely, and that he is liable only for those acts of his deputy which he does strictly by *virtue* of his office. The true rule is laid down by Mr. Justice BRONSON, in *Walden* v. *Davison, supra,* as follows: On ascertaining whether the sheriff is answerable for the acts of his deputy, the question is whether the latter did an official or mere personal act. If the act is personal only, and does not relate to his duty as an officer, he is not the agent or servant of the sheriff; but if he execute process under color or by virtue of his office, the sheriff is answerable for the consequences. It is not necessary to charge him that the act of the deputy should in all cases be lawful, or one which he might rightfully do under the process, if it were so. The

sheriff would not be liable where the deputy takes the property of some other person than the judgment debtor.

Within the rule here laid down, which is fully sanctioned by principle and authority, the sheriff in this case is answerable for the act of his deputy, and must respond for the money in his hands. The judgment should be affirmed with costs.

GRAY, C. (dissenting). I cannot concur in the opinion expressed, that this execution " was not absolutely void in the hands of the deputy." In the case of *Walden* v. *Davison* (15 Wend., 575), relied upon as authority to sustain it, the attorney who issued the execution had the right to issue it, and the sheriff who received it had the right to receive it; it was not void, but merely irregular, for want of adherence to prescribed rules in issuing it, the result of an innocent mistake; in this case the execution had been returned and filed in the office of the clerk of the proper county, and thus placed beyond the legal control of the attorney who issued it, or the deputy who returned it, having become in all respects *functus officio;* it became then a part of the official duty enjoined upon the clerk to preserve it in the condition in which he received it (1 R. S., 5 ed., 866, § 103), until the court, whose process it was, should otherwise direct. The neglect of this duty (if he permitted the deputy to take it from his files), was a misdemeanor on his part. (3 id., 979, § 53.) And if the deputy, who after procuring the execution from the clerk's office erased his return and the clerk's filing therefrom with intent to defraud, he was guilty of forgery. (3 id., 950, § 25, subs. 1 and 2.) The case is without evidence to show that the defendant was in any way informed of, or that he ever sanctioned these wrong acts of the deputy; and it appears that the deputy retained in his own hands the funds collected, and refused to comply with the plaintiff's demand to pay them over. " Men seldom do unlawful acts with innocent intentions; the law presumes every act in itself unlawful, to have been criminally intended until the contrary appears;" and the burden of disproving a criminal intent is thrown upon the accused.

(2 Bishop on Criminal Proceedings, 615.) The presumption of a criminal intent arising from the unlawful acts, is, in this instance, strengthened by the circumstance of his retaining and refusing to pay over the funds collected, but it is quite unnecessary to determine the degree of wrong committed by him. It is sufficient, to render the execution void, that the act of taking it from the clerk's office and erasing the return indorsed upon it was impliedly, at least, forbidden by law (*Clark* v. *Lyman*, 10 Pickering, 45, 48), and no more the act of the sheriff, because his deputy proceeded under color of office, than if he had been destitute of process (*ex parte Reed*, 4 Hill, 572, 573), and hence the judgment should be reversed.

For affirmance, EARL, HUNT and LEONARD, CC.

For reversal, GRAY, C.

LOTT, Ch. C., not voting.

Judgment affirmed.