## WITTER *against* LATHAM.

A person discharged from imprisonment upon his petition for the benefit of the statute granting relief in cases of insolvency, may be proceeded against and described, in foreign attachment, as an absconding debtor ; and the allegation of his character as such, will be supported, by proof of his discharge from imprisonment.

Where it became necessary for the plaintiff in the *scire-facias,* to prove the discharge of the original debtor under the insolvent law ; and the plaintiff not being able to produce the certificate of discharge, proved, by the com-

missioners, that they had given such certificate and made return of their *Windham,*
doings to the court; by the insolvent debtor, that he had received such *July,* 1837.
certificate, but had not seen it, for a number of years, and did not know
where it was, though he did not state, that he had made search for it among    Witter
his papers; and by the clerk of the court, that he had examined the files    *v.*
and records of the court, and could not find any such certificate, or any    Latham.
return of the commissioners; it was held, 1. that there was sufficient evi-
dence of the loss of the certificate to dispense with the production of it;
2. that the plaintiff was excusable for not producing a copy from the re-
cord of the court; 3. that consequently, parol evidence of its contents was
admissible.

The loss or destruction of an instrument is a fact to be decided by the court,
previous to the admission of secondary evidence of its contents, and is not
afterwards to be submitted to the jury.

It is not essential to the validity of a discharge under the insolvent law of
this state that the certificate should be recorded; but it takes effect from
the delivery.  The object of the statute in directing it to be recorded, and
in making a copy evidence, was, to render the evidence of the discharge
more complete.

A finding of the court, on an examination of the garnishee in the original ac-
tion, that he is indebted to the defendant, is evidence of such indebtedness
in a subsequent *scire-facias* against the garnishee.

Such finding is valid between the parties, until regularly set aside in due
course of law, though the court, in arriving at that result, admitted im-
proper testimony, and then erroneously refused an appeal from its judg-
ment.

But such finding, though valid between the parties, does not conclusively
bind the defendant; but the statute authorizes him to try the same ques-
tion again on the *scire-facias,* and to controvert, by new and further testi-
mony, the correctness of the former decision.

Where the only evidence offered by the plaintiff, on the *scire-facias,* in sup-
port of his demand, was the finding of the court in the original action;
and the defendant introduced four witnesses, whose testimony was not be-
fore the court, on the former trial; and their testimony, in connexion with
his own, went to disprove the plaintiff's claim; after a verdict for the plain-
tiff, it was held, that such verdict was manifestly against the weight of ev-
idence, and a new trial was granted on that ground.

THIS was a *scire-facias* in a process of foreign attachment,
against *Asa L. Latham;* tried at *Brooklyn, January* term,
1837, before *Waite,* J.

The original writ, a copy of which was left in service with
the defendant, was against *Cyrus Latham,* the father of the
defendant.   In this writ it was averred, that " said *Cyrus La-
tham* is not liable to imprisonment, at the suit of the plaintiff,
for the debt aforesaid, and is an absconding debtor."   In the
present *scire-facias,* he was described as an absent and ab-
sconding debtor.   On the trial, the plaintiff claimed, that he

*Windham,*
*July, 1837.*

*Witter*
*v.*
*Latham.*

was an absconding debtor, at the time of the service of the writ, on the ground that he had been discharged from imprisonment, upon his petition against his creditors for the benefit of the act provided for insolvent debtors ; and in support of this claim, the plaintiff offered in evidence a copy of the original writ.    The defendant objected to its admission, on the ground of a variance between *that* and the *scire-facias.*    The court overruled the objection and admitted the evidence.

To prove that *Cyrus Latham* had been discharged from imprisonment, the plaintiff gave in evidence a copy of his petition against his creditors and the proceedings thereon, in all respects as required by the statute, except that it did not contain a copy of the certificate of discharge and the return made by the commissioners.    The plaintiff also offered the testimony of the clerk of the superior court, that he had examined the files and records of the court and could not find any such certificate, or any return made by the commissioners.    He also offered the testimony of the commissioners, that they had granted such certificate, discharged their duties according to the requirements of the statute, and made return of their doings to the court, to be lodged on file.    He further offered the testimony of *Cyrus Latham,* that he had received such a certificate, but had not seen it, for a number of years, and did not know where it was. The defendant objected to the admission of the evidence respecting the discharge, claiming that the proof of its loss was not sufficient ; and that it was necessary that such certificate should have been lodged with the clerk of the superior court, to constitute evidence of the debtor's having conformed to the provisions of the statute.    But the court being satisfied with the evidence respecting the loss of this certificate, and the return of the commissioners, admitted the testimony offered as evidence of the debtor's discharge, as claimed by the plaintiff.

To prove the indebtedness of the defendant to *Cyrus Latham,* the plaintiff offered the record of the county court finding the defendant indebted to the said *Cyrus* in the sum of 320 dollars ; and refused to call on the defendant, though he was then in court, ready to be examined.

The defendant exhibited in evidence a bill of exceptions in the original suit, filed by the present defendant, and allowed by the county court ; from which it appeared, That in the course of the examination of the defendant, as to his liability and in-

Windham,
July, 1837.

Witter
*v.*
Latham.

debtedness under this process, in reply to interrogatories put to him, two or three questions arose regarding the admissibility of testimony offered by the plaintiff to contradict the statements of the defendant, which the court decided in favour of the plaintiff; and thereupon the court found, that the defendant was indebted to *Cyrus Latham*, at the time of the service of the process, to the amount of 320 dollars : that judgment was rendered against *Cyrus Latham* by default : that the present defendant moved the court to allow an appeal from their decision against him as to his indebtedness to *Cyrus Latham ;* but the court refused to allow such appeal. The defendant then claimed and prayed the court to decide, that the finding of the county court, so made, was not to be received as evidence of his indebtedness to *Cyrus Latham.* The court over-ruled this objection, and received the record for the purpose for which it was offered.

The plaintiff offered no other evidence of any indebtedness to the defendant than such finding of the county court; and neither party offered any evidence from the judges of the county court shewing upon what grounds they came to their result, or what sums were allowed by them in finding such indebtedness. But the defendant introduced evidence to prove what were the several matters claimed against him on the trial before the county court, and in relation to which the plaintiff then offered testimony. He was then called upon to disclose, that he had received and had the benefit of the goods in the store of *Cyrus Latham*, in the town of *Groton ;* that he had received from him, while confined in gaol in *Providence*, a large sum of money ; that he had also received a large sum from him sent by him from *New-York*, by the hands of *Elias Palmer*, amounting to several hundred dollars ; that he had contracted for the purchase of a dwelling-house and lot from *Billings Brown*, and had made some payments therefor ; that the property was conveyed to the defendant and to his brother-inlaw, *Elisha W. Minor.*

The defendant then offered himself a witness, and having been sworn, was enquired of, whether he could testify any thing further than he testified before the county court ; and replied, that he could not. The plaintiff thereupon objected to any testimony from him ; but the court permitted him to testify.

The defendant testified, that as to the goods in the store in

*Groton,* he did nothing, except during his minority, by the direction and as the servant of his father ; and that the proceeds of the sales were received by his father, and no part thereof retained by the defendant. He also testified, that the money received by him from his father in *Providence,* when confined in gaol, was also received by him during his minority, for the purpose of being delivered to his mother, the wife of *Cyrus Latham,* and was delivered to her immediately thereafter ; that the money claimed to have been sent to him from *New-York,* by *Palmer,* was never received by him, but was received by *Minor.* He also testified, that he had received a deed of conveyance with *Minor* from *Billings Brown,* of a house and lot ; that he was not concerned in the purchase, when the contract was first made with *Minor ;* that he contracted with *Minor* for this property, after *Minor* had mostly paid for it ; that he made the last payment to *Brown,* and gave his note to *Minor* so as to make up one half of the purchase money ; and that the conveyance was afterwards made to him and *Minor.* He further testified, that when the copy was left in service with him, he was not indebted to *Cyrus Latham,* and had not any of his goods or estate in his hands.

The defendant also gave the following testimony, which was not had or used before the county court.

*Nancy Minor* testified, that in the winter of 1828, her father, *Cyrus Latham,* purchased for her husband, *E. W. Minor,* and at his request, the house and lot of *Billings Brown,* for 1300 dollars ; that the first payment was made before Mr. *Minor*'s return home, in a note for 100 dollars against *Nathaniel Kimball,* and 200 dollars in money belonging to the witness's grandmother, which Mr. *Minor* paid to her, when he came home ; that the defendant paid 250 or 300 dollars, and gave his note to Mr. *Minor* for 400 dollars, which note still remains due.

*Prudence Latham* testified, that she never knew of any property of *Cyrus Latham* being in the hands of the defendant, or of the defendant's being indebted to him at any time, or of his having any money in his hands belonging to *Cyrus Latham,* except 100 dollars, which he brought from *Providence,* in 1829, and this he delivered to the witness, who paid it to *Jonas Witter ;* that she understood this money was a part of the insurance money on the *Oliver Wolcott ;* that *Cyrus*

*Latham*, in the fall of 1831, sent by *Elias Palmer* to *E. W. Minor* from *New- York*, 80 or 85 dollars, the witness being in *New-York* when he sent it; that *C. Latham* was then sick and confined to his bed ; that the witness brought the money, and he counted it in her presence : that he sent no money from *New- York* to the defendant; that the defendant is the son of the witness, and was born in 1811.

*Tracy Gates* testified, that he did not know of any property belonging to *Cyrus Latham* being put into the hands or possession of the defendant, or transferred to him, at the time of *Cyrus Latham's* failure in business, or at any other time ; that in *June* or *July*, 1829, the witness purchased of *Cyrus Latham* the stock of dry goods, groceries, crockery and other articles usually kept in a country store, for which he gave about 900 dollars, in cash, which he paid into the hands of *Cyrus Latham :* that the defendant did not interfere, in the least, at the sale, and had nothing to do with the transaction ; that the witness took a bill of sale of the goods so purchased by him, and sold them, with other goods purchased at *New- York* and elsewhere, and applied the proceeds to his own use ; that this purchase was in all respects *bona fide.*

*J. W. Brewster* testified, that he sold out his stock in trade to the defendant, amounting to about 600 dollars, to be paid by instalments ; that one quarter was paid down, and the residue was to be paid in twelve, six, and eighteen months ; that these instalments have never been paid ; that the witness has advanced money, from time to time, at one time, 300 dollars, to pay *Billings Brown* the last payment for the house and lot.

The cause was committed to the jury upon the evidence, who found a verdict for the plaintiff. The court returned them to a further consideration of the cause ; but they returned the same verdict again, which was then accepted and recorded. The defendant thereupon moved for a new trial, on the ground that the decisions of the court in the progress of the trial were erroneous, and that the verdict was contrary to the evidence in the cause.

*Strong*, in support of the motion.

*Goddard*, contra.

WAITE, J.  *Cyrus Latham*, the original debtor, having been discharged from imprisonment, upon his petition for the benefit of the act provided for insolvent debtors, was sued, by the plaintiff, and described in the writ as an *absconding debtor*. Was he properly so described ?  This depends upon the construction of the statute, which provides, that a debtor discharged from imprisonment "shall be deemed an absconding debtor" within the meaning of the "act authorizing the collection of debts by foreign attachment ;" and that it shall be lawful for his creditor "to proceed against the goods, effects, and credits of such absconding debtor, in the hands of his attorney, agent, factor, trustee or debtor, in the manner provided in said act." *Stat.* 257. (ed. 1835.) *anno* 1830.  The plaintiff, therefore, by the terms of the statute, had a right to treat him as an absconding debtor,—to commence his suit against him as such,—and so to describe him in his original writ.  The proof of his discharge from imprisonment will support the allegation that he was an absconding debtor.  The statute says, he shall be deemed such, and speaks of him as "such absconding debtor."  No valid objection, therefore, existed against the admission of the original writ in evidence.

Was the evidence respecting the loss of the certificate sufficient to authorize the court to admit secondary evidence ?  The statute directs, that "the certificate given by the commissioners shall be recorded in the records of the court," and "an authenticated copy thereof shall be admitted in evidence in all courts in this state." *Stat.* 331, 2. (ed. 1835.)  The original certificate and a copy of record were each of them evidence ; and neither was produced.  The commissioners testified, that they had granted such certificate, had discharged their duty according to the requirements of the statute, and made return of their doings to court.  The clerk of the superior court testified, that he had examined the files and records of the court, and could not find any such certificate or any return of the commissioners.  The plaintiff had done all that could reasonably be required of him in relation to the production of the copy. He had procured the clerk of the court, who had the custody of the records, to examine the files and records, and nothing could be found.  This, in our opinion, clearly was sufficient to excuse him for not producing the copy.

With respect to the original certificate, he produced the insolvent debtor, to whom the certificate was given, and who

was entitled to the custody of it ; and he testified, that he had received such certificate, but had not seen it for a number of years, and did not know where it was. It is true, he did not state, that he had made search for it among his papers. Had there been any reason to believe, that there was any collusion between the plaintiff and the witness, it might have been proper to have required such search. But no circumstance appears justifying such a belief; and no such claim was made in the court below. The plaintiff had no power to compel the witness to make such search. He might, when he summoned the witness, have directed him to bring with him to court the document ; and the court would have compelled him to do all that was reasonable to comply with the direction in the summons. But had he been summoned in the manner stated, and testified as he did, would he not have been excused for the non-production of the document, unless it appeared that his omission to search for the paper was done by design? If so, then the plaintiff has done all that the law requires, in calling upon the insolvent debtor in the manner he did.

It is very difficult to lay down any general rule as to the degreee of diligence necessary to be used in searching for an original document, to entitle the party to give secondary evidence of its contents. That must depend, in a great measure, upon the circumstances of each particular case. In the case of *Brewster* v. *Sewell*, 3 *Barn. & Ald.* 296., Chief Justice *Abbott* said, " where the loss or destruction of the paper may almost be presumed, very slight evidence of its loss or destruction is sufficient." *Best*, J. said, "if a paper be of considerable value, or if there be reason to suspect that the party not producing it has a strong interest which would induce him to withhold it, a very strict examination would properly be required ; but if a paper be utterly useless, and the party could not have any interest in keeping it back, a much less strict search would be necessary to let in parol evidence of its contents."

So in *Renna* v. *The Bank of Columbia*, 9 *Wheat.* 581. 597. *Thompson*, J., in delivering the opinion of the court, remarked, that, " if the circumstances will justify a well grounded belief, that the original paper is kept back by design, no secondary evidence ought to be admitted ; but when no such suspicion attaches, and the paper is of that description, that no

*Windham,*
*July, 1837.*

Witter
*v.*
Latham.

doubt can arise as to the proof of its contents, there can be no danger in admitting the secondary evidence."

There is nothing in the present case, that leads to the presumption that the plaintiff withheld the certificate by design. There is no evidence that he ever had it, or had ever seen it.

The reason why the law requires the production of the original instrument, is this; that other evidence is not so satisfactory, when the original document is in the possession of the party, and where it is in his power to produce it, or get it produced, provided he gives notice. In either of these cases, if he does not produce it, or take the necessary steps to obtain its production, but resorts to other evidence, the fair presumption is, that the original document would not answer his purpose, and that it would differ from the secondary evidence which he gives with respect to the instrument itself. *Brewster* v. *Sewell.* The law, therefore, requires the use of all reasonable measures to produce the primary evidence ; and if it cannot be found, by the use of due diligence, the law raises a presumption of its loss, and admits evidence of its contents. *Freeman* v. *Arhell,* 2 *Barn. & Cres.* 494. *Taunton Bank* v. *Richardson,* 5 *Pick.* 436. This rule of evidence is to be so applied as to promote the ends of justice, and at the same time guard against fraud and imposition. *Renna* v. *Bank of Columbia.*

The cases upon this subject are numerous ; and, upon a reference to the authorities, it will be found that they fully sustain the view we have taken of this part of the case. *The King* v. *East Farleigh,* 6 *Dowl. & Ryl.* 147. *Kensington* v. *Inglis* & al. 8 *East,* 273. *Donelson* v. *Taylor,* 8 *Pick.* 390. *Hathaway* v. *Spooner,* 9 *Pick.* 23. *Jones* & al. v. *Fales,* 5 *Mass. Rep.* 101.

In the case of *Coleman* v. *Wolcott,* 4 *Day,* 388. it was said by the court, that the loss or destruction of an instrument, which, in that case, was a contract under seal, was not a preliminary question to be decided by the court, but a material and traversable fact to be determined by the jury. Later decisions, however, have established a different rule, and, as we think, upon correct principles. It is the peculiar province of the court to decide upon the admissibility of evidence ; and it is for the jury to weigh and consider that evidence, when received. But the court cannot legally admit secondary evidence of the contents of a written instrument in consequence of the loss of that instrument, until it has found the fact of the loss.

The court must, in the first place, decide that question ; and having decided it, there is a manifest impropriety in referring the same question again to the jury, and in suffering them to review a decision which the court has been by law required to make. 1 *Stark. Ev.* 354.   *Donelson* v. *Taylor*, 8 *Pick.* 390. *Walker* v. *Beauchamp*, 6 *Car. & Payne*, 552.

It has been further urged, that, as it appears that the certificate had not been recorded, it could not operate to protect the insolvent debtor from imprisonment. This question also depends upon the construction of the statute. It directs, that upon the debtor's having made his assignment upon oath, the commissioners shall grant him a certificate, " and such certificate shall be evidence of his conformity, and as such shall operate to protect the person of such insolvent debtor from arrest or imprisonment." *Stat.* 330. (ed. 1835.) A subsequent section (*sect.* 6.) directs, that the certificate shall be recorded, and provides that an authenticated copy may be evidence. It is apparent, therefore, that the certificate, when granted, shall afford the protection. It takes effect from the delivery, and not from the time of recording. The object of the statute in directing it to be recorded, and in making a copy evidence, was, to render the evidence of the discharge more permanent.

It is also claimed, that the finding of the county court ought not to have been admitted in evidence. The statute provides, that, if it shall appear from the examination, that the garnishee has in his possession goods and effects of the defendant, or is indebted to him, "then the court shall ascertain the amount, and the same shall be sufficient evidence to authorize the court to render judgment therefor in favour of the plaintiff on a *scire-facias* against the garnishee"—" unless the garnishee can prove, by new and further evidence, that he had not in his possession the goods and effects of such debtor, and is not indebted to him." *Stat.* 256. (ed. 1835.) The statute, therefore, makes the amount ascertained by the county court, admissible, and in a certain event, *sufficient* evidence. The plaintiff in the *scire-facias* must prove his claim upon the defendant. He cannot tell whether the defendant will, or will not, introduce any new or further evidence. It is not necessary that the defendant should do it, until, at least, a *prima facie* case is made out against him. The plaintiff, therefore,

*Windham,*
*July, 1837.*

*Witter*
*v.*
*Latham.*

properly introduces the finding of the county court, and, in case no new evidence is introduced on the part of the defendant, that finding is sufficient; and it becomes unnecessary to introduce any other. But if new testimony is offered on the part of the defendant, the plaintiff may meet it with testimony on his part.

But, it has been said, that the county court, as it appears from the bill of exceptions filed in that court, in their examination respecting the liability of the defendant, erred in admitting improper testimony, and in refusing to allow an appeal from their decision. In our opinion, it becomes unnecessary to enquire whether the county court erred in either of these particulars, as such error would not render their finding void. If a court errs in admitting improper testimony, or in refusing a party an appeal, when he is by law entitled to it, the judgment may be erroneous; but will not, on that account, be void. It stands as valid between the parties, until regularly set aside, by due course of law. We discover nothing in the present case, which requires a departure from these well settled rules.

We therefore think, there was no error in the admission of testimony on the trial of this cause.

But, another question remains to be considered; and that is, whether the verdict rendered by the jury was so far against the evidence as that a new trial ought to be granted. The rule upon this subject has become perfectly well settled, that a new trial may be granted when the verdict is manifestly against the weight of evidence. *Kinne* v. *Kinne,* 9 *Conn. Rep.* 102. *Bacon* v. *Brown,* 9 *Conn. Rep.* 334. *Laflin* v. *Pomeroy,* 11 *Conn. Rep.* 440.

The only evidence offered on the part of the plaintiff, in support of his demand upon the defendant, was, the finding of the county court. Had no new evidence been introduced on the part of the defendant, the jury would have been bound to give their verdict for the amount so found. The defendant introduced the testimony of four witnesses, whose testimony was not before the county court. This testimony goes to disprove some, if not all, the items of the plaintiff's claim, as made in the county court; and taken in connexion with the defendant's testimony and in the absence of all other, clearly shews, that the defendant was not indebted to *Cyrus Latham.* The only evidence to rebut this, is the finding of the county court. Was

that sufficient? We think not. It does not appear upon what evidence the amount, as ascertained by the county court, was found : whether the evidence preponderated strongly in favour of the plaintiff, or was nearly balanced. We cannot say but that if the county court had heard the testimony given in the superior court, they would readily have come to an entirely different result.

The object of the statute undoubtedly was, to provide a summary mode of determining the amount of property in the hands of a garnishee, or the amount of his indebtedness, without intending to bind him conclusively and at all events, by that determination. The statute, therefore, authorizes him to try the same question again upon a *scire-facias*, and shew, by new and further testimony, that the amount found by the county court was not correct. It is the duty of the jury to decide the case upon the evidence before them.

The defendant, on the trial in the court below, was admitted as a witness, although he stated, that he could not testify to any thing different from what he stated in the county court. His testimony *alone* would have availed him nothing against the finding of the county court, but was proper to be received in connexion with the new testimony offered by him : and it was perfectly immaterial which was first received.

Without recapitulating the evidence stated in the motion, we are inclined to the opinion that the verdict of the jury was so manifestly against the weight of evidence, that, upon that ground alone, a new trial ought to be granted.

In this opinion the other Judges concurred.

New trial to be granted.