## ALEXANDER PRUSSING

### v.

## LEWIS B. JACKSON.

*Opinion filed February 17, 1904.*

. 1. APPEALS AND ERRORS—*whether verdict was grossly excessive is a question of fact.* Whether a verdict is so grossly excessive as to indicate that it resulted from passion, prejudice or total misconception of the case by the jury is a question to be determined from all the facts in evidence, and is one upon which the judgment of the Appellate Court is final.

2. SAME—*when it is not error for Appellate Court to enter remittitur and affirm.* The fact that the Appellate Court finds that a *remittitur* of $8000 should be allowed, in justice, from a verdict of $20,000, rendered, in the main, for vindictive damages, does not warrant the conclusion, as a matter of law, that the verdict was wholly the result of prejudice and that it was error for the Appellate Court to enter the *remittitur* and affirm the judgment.

3. EVIDENCE—*what necessary to authorize secondary evidence of writing.* In order to let in secondary evidence of a written instrument not shown to have been destroyed, the evidence must show that the search for the instrument was made in good faith, and that it was as thorough as though all benefit of the instrument would be lost unless it were found.

4. LIBEL—*when printed article is not admissible in action for libel.* The printed copy of a writing upon which an action for libel is based is not admissible as secondary evidence, where the writing is shown to have been last in the possession of a certain person but no effort is shown to produce such person or obtain the writing from him.

5. SAME—*when admission of defendant does not render printed article admissible.* The fact that the defendant in an action for libel, based upon an article printed in a paper with which he was not connected, is compelled, over his objection, to testify that he wrote an article similar to the one published, which he gave to a reporter although he did not authorize its publication, does not render the printed article admissible without proper proof of the loss or destruction of the original writing.

WRIT OF ERROR to the Appellate Court for the First District;—heard in that court on writ of error to the Circuit Court of Cook county; the Hon. GEORGE W. BROWN, Judge, presiding.

ERNEST SAUNDERS, for plaintiff in error:

It is not matter of course to allow secondary evidence of the contents of an instrument in suit on proof of its destruction. The motive and intent of the destruction are necessary to be shown before secondary proof will be admitted. *Bagley* v. *McMickle*, 9 Cal. 430.

Secondary evidence of contents of a document cannot be given if the original is in possession of a stranger unless a subpœna *duces tecum* be served, or if the original is in the possession of an adverse party, unless notice to produce be served. 7 Am. & Eng. Ency. of Law, 88.

In general, a copy of an instrument is not admissible as secondary evidence, unless, by having been compared with the original, it is shown to have been a copy.

No liability attaches to the author of a libel for reproduction unless by his authority or consent. Cooley on Torts, 227; Starkie on Slander and Libel, 901; *Clifford* v. *Cochrane*, 10 Ill. App. 570.

A *remittitur* does not cure a verdict when it is the result of passion or prejudice. *Loewenthal* v. *Streng*, 90 Ill. 74; *Railroad Co.* v. *Binkopski*, 72 Ill. App. 22; *Railway Co.* v. *Fennimore*, 78 id. 478; *Nicholson* v. *O'Donald*, 79 id. 195; *Railway Co.* v. *Brown*, 89 id. 318.

COLLINS & FLETCHER, for defendant in error:

The Appellate Court, by affirming the judgment of the circuit court, found that defendant published the libel printed, and this court is concluded by such finding. *Darlington* v. *Chamberlin*, 120 Ill. 585; *Railway Co.* v. *Call*, 143 id. 177; *Pullman Car Co.* v. *Laack*, 143 id. 242; Newell on Slander and Libel, (2d ed.) 227, 228, 244, 246; *Commonwealth* v. *Wolfinger*, 16 Pa. Co. Ct. 257.

The plaintiff in error admitted the composition and publication of the original of the copy of the libel offered in evidence. Such admissions were primary and not secondary evidence, and dispensed with the necessity for the introduction of the original libel. *Woodburn* v. *Miller*,

Cheves, (S. C.) 194; *McLaughlin* v. *Russell*, 17 Ohio, 475; *Morey* v. *Hoyt*, 62 N. H. 542; *Haas* v. *Storner*, 47 N. Y. S. 1100; *Combs* v. *Union Trust Co.* 146 Ind. 688; *Hoefling* v. *Hambleton*, 84 Tex. 517.

Mr. JUSTICE BOGGS delivered the opinion of the court:

This was an action for libel, against the plaintiff in error by the defendant in error. The declaration charged that the plaintiff in error composed and caused to be published in the *Chicago Times-Herald*, a daily newspaper published in the city of Chicago, a certain false, scandalous, defamatory and libelous article, set forth *in hæc verba*, with appropriate innuendoes, in the declaration. The article is quite lengthy, and it is not necessary to the proper disposition of the case it should be recited in this opinion. In substance, the article charged "the crushed-stone dealers and cement manufacturers" had formed a combination for the purpose of procuring the passage of an ordinance by the city council of the city of Chicago providing for the sole use of concrete made from crushed stone and cement in the building of Chicago sewers; that "a large sum of money, nearly $100,000," was said to have been raised and placed in escrow to purchase the necessary votes of aldermen in the city council to secure the passage of the bill, and "that the bill will be recommended by" the defendant in error, as city engineer, and "that it is said that said city engineer [the plaintiff] was to be liberally taken care of" by said combination, and imputed to said defendant in error that he had been guilty of the crime of bribery and corruption in office. The plaintiff in error filed the plea of not guilty, and the cause was submitted for trial before the court and a jury. The jury returned a general verdict finding the plaintiff in error to be guilty and assessing the damages of defendant in error at the sum of $20,000. The jury also returned answers to certain interrogatories, among others the third, finding that the defendant

in error did not suffer any actual damages by reason of the alleged libelous publication. A writ of error was sued out of the Appellate Court for the First District in behalf of the present plaintiff in error, and upon a review of the case in that court it was adjudged that there was error in the record, but that if the sum of $8000 should be remitted from the judgment the error should be regarded as cured and a judgment entered affirming the judgment in the sum of $12,000 and assessing the costs against the defendant in error, Jackson. The defendant in error thereupon entered a *remittitur* in the sum of $8000 and the judgment was affirmed in the sum of $12,000. This is a writ of error sued out by the plaintiff in error to reverse the judgment of the Appellate Court.

We are advised by the judgment of the Appellate Court that it was the opinion of that tribunal that the verdict and judgment were excessive,—so flagrantly excessive that unless two-fifths of the amount should be remitted the judgment would be reversed.

Counsel for the plaintiff in error insists that it appears from the special finding of the jury that the verdict of $20,000 was wholly for vindictive damages, and that it was shown without dispute in the record that the total value of all the property of the plaintiff in error did not exceed $11,600, and that a verdict so grossly excessive evinces that the jury were moved by passion, prejudice or a total misconception of the case, and that it is the settled rule that when it is manifest the elements of passion and prejudice, or misconception, controlled the action of the jury and shaped their general verdict, it cannot be known but that the same improper influences entered into the finding of other facts important to the issue, if not to the issue itself, and in such state of case the error cannot be, and is not, removed by a *remittitur*. It is therefore argued that we should declare, as matter of law, that the error in the record could not be cured by the *remittitur*, and that the Appellate Court

erred in not reversing and remanding the cause. It is, however, a question to be determined from all the facts established by the evidence whether the verdict is so grossly excessive as to evince that it resulted from passion, prejudice or total misconception on the part of the jury. We must therefore accept the conclusion of the Appellate Court as to this question of fact.

The argument that if the ends of justice demanded that $8000 should be remitted from a judgment in the sum of $20,000, rendered, in the main, if not wholly, as vindictive damages, the conclusion indisputably arises that the jury which rendered the judgment were moved by passion, prejudice or a total misconception of the rights of the parties, must be conceded to be entitled to great force; but the conclusion does not arise as a matter of law but out of and depending on the facts, hence we can not say it was error to allow the *remittitur* and affirm the judgment as reduced thereby.

We think, however, the plaintiff in error has lawful right to complain of an erroneous ruling of the court as to the admissibility of evidence. It was sought to maintain the action against the plaintiff in error as the author of the alleged libelous publication which appeared in the *Chicago Times-Herald.* He was in nowise connected with the management, control or publication of the newspaper and had no interest therein. The action was against him on the alleged ground that he was the author of a statement, in the form of a letter, which appeared as a part of the publication, and that he had given, or permitted one Varian, a reporter for the newspaper, to take, the letter under such circumstances as that he should be held to have procured it to be published. The cause was tried before the court and a jury.

The defendant in error, plaintiff below, was produced as a witness in his own behalf, and, among other things, testified that he, together with one William B. Kent, had an interview with the plaintiff in error, during which he

called plaintiff in error's attention to the publication in the newspaper and asked him what he knew of this article himself, and he said that it was from information given him; that he asked for his information and he declined to give it there; that he stated that he would give it to plaintiff in person, which he did afterwards; that the greater part of the discussion was between Kent and Prussing; that Kent asked Prussing if he knew things stated of his own knowledge, and Prussing said he didn't know it himself; that he was asked, "Who is your informant?" or "Where did you get your information?" and said, "This report, this letter, is exactly what I was informed;" that the letter that appeared in the article of March 12 in the *Times-Herald* was the article discussed, besides reportorial remarks or statements in the paper, the letter being in small type; that something was said about how the communication came in the *Times-Herald*, and Prussing stated the letter that appeared was the one given to the reporter. Counsel for the defendant in error then produced a copy of the newspaper which contained the alleged libelous publication and asked the witness if that was the statement about which they were talking. The plaintiff in error then objected, and a colloquy occurred between the court and counsel for the respective parties, which, together with the objections of counsel, rulings of the court in the nature of remarks, and the notation of exceptions, occupies substantially four printed pages of the abstract.

We think the objections preferred by counsel for the plaintiff in error called upon the court to rule whether the printed publication was admissible in evidence without the production of the writing of which the plaintiff in error was the author and which it was asserted had been re-produced in the printed article, and which, so re-produced, constituted the alleged libel. Counsel for the defendant in error insist that no definite and specific objection of that nature was made. This contention

might be disposed of by incorporating at length in this opinion that which appears on the four printed pages of the abstract relative to the occurrences in court and the remarks of court and counsel relative to the matter; but it may also be sufficiently answered by saying that it appears from the abstract that counsel for the plaintiff in error made his objection so sufficiently clear and specific that counsel for the defendant in error, in order to secure from the court a ruling which would admit the printed article to be received in evidence, demanded of counsel for the plaintiff in error that counsel should produce the original manuscript in pursuance of notice previously served by defendant in error on plaintiff in error to bring into court the original writing. Counsel for the defendant in error read to the court the notice which had been served calling for the production of the original writing in court. In response to this, counsel for the plaintiff in error stated in open court that the document was not in their possession or in the possession of their client and had never been in their possession, and had not been in the possession of their client since it was taken from his office by a Mr. Varian, a reporter for the *Times-Herald.* The court then remarked, "Well, that entitles you to introduce secondary evidence." But after further remarks by counsel and further reflection by the court it is evident that the court was in doubt as to the admissibility of the newspaper publication, and counsel for the defendant in error proposed that he should be permitted to read the printed article in evidence, and would "undertake to connect it with the defendant, so if we fail, of course your honor will exclude it." The court consented to allow it to be read with that understanding, but counsel for plaintiff in error objected and excepted to this ruling. The printed article was then received in evidence and read to the jury.

In further confirmation of the view that the objections preferred by counsel for the plaintiff in error specifically

brought to the attention of the court and counsel the insistence that the writing was the primary evidence and that secondary proof of its contents was not admissible, in the absence of such writing, except on proof of its destruction or of due and diligent but unsuccessful search for it, and that the printed article was received in evidence conditionally, on the promise of counsel for the defendant in error that the necessary proof to render the printed article admissible would be supplied, we find that the defendant in error produced as a witness one Herman L. Reiwitch, city editor of the *Chicago Times-Herald*, for the purpose of laying the foundation for the introduction of secondary evidence of the contents of the manuscript, which was in the handwriting of the plaintiff in error, by showing that the original had been lost or that it was not in the power of the defendant in error to produce the same. The testimony of this witness was received by the court as sufficient to justify the admission of such secondary proof. In this the court was in error. This witness, after stating that he had charge of the department of the *Times-Herald* office in which the printed article in question was prepared, testified further, to quote from the abstract, as follows:

"I saw something similar to it in the afternoon preceding the day of the publication. One of the reporters brought it to me. His name was Varian. I do not know where Varian is now. It is about one and one-half years since he has been connected with *Chicago Herald*. I don't recall whether letter was in manuscript or typewritten.

Q. "Is that 'Exhibit 1' that you hold in your hand a copy of a communication that Mr. Varian brought you, or not? (Objection by defendant; sustained.)

Q. "Of what is that a copy, if you know? (Objection by defendant; overruled and exception.)

A. "To the best of my recollection it is a reproduction of that letter brought in by Mr. Varian. I don't recall whether any name was appended to that letter.

Q. "What was done with the communication that you have there by you? (Objection by defendant; overruled and exception.)

A. "It was printed as brought in. (Objection to answer by defendant and motion to strike out; overruled and exception.)

The court: "Brought in by whom?

A. "Brought in by the reporter.

Judge Collins: "Have you made search for that paper writing? (Objection by defendant as leading; overruled and exception.)

A. "No, sir.

Q. "Have you ordered a search made?

A. "No, sir; it would be absolutely impossible to find it now. (Objected to by defendant as not responsive.)

Witness: "We destroy manuscripts of that kind within a few days after they are used, unless there is some particular occasion for saving it. (Motion to strike out by defendant; denied and exception.) This was saved for, I think, some little time. Can I state the circumstances under which it was saved?

A. "Yes.

A. "The letter was of a peculiar character, of course, and I thought perhaps it might be questioned. (Objection by defendant and ordered stricken out.) And I told the reporter to keep that letter. (Answer objected to by defendant.)

The court: "What did you do with it? Have you got it now?

A. "No, sir.

Judge Collins: "It has been destroyed, has it?

A. "So far as I know it is destroyed.

Mr. Saunders: "You don't know whether it is destroyed or not, do you?

A. "No, sir. The original letter was kept by the reporter. There is no particular place in the *Herald* office where such matters are kept.

Q. "If this has been preserved by the *Herald* company where would you go to find it? (Objection by defendant; overruled and exception.)

A. "It would be in my possession, most likely. (Answer objected to by defendant with motion to strike out.)

Q. "This article is not now in your possession?

A. "No, sir.

Q. "I will ask you if in making up the paper would that article be preserved as a whole in the composing room, if you know? (Objection by defendant as leading.)

The court: "Are you going to deny this line of testimony?

Mr. Saunders: "I am waiting for them to prove their case, that is all.

Judge Collins: "I don't care anything particular about that—to show that they cut it up in strips, that is all."

This evidence was insufficient to justify the admission of secondary evidence as to the contents of the communication which was written by the plaintiff in error. The witness testified that search had not been made for the writing; that while it was the custom to destroy manuscripts of that kind, there was an exception to that custom when occasion required, and that under this exception the manuscript in question was saved and not destroyed; that it was given to Varian, the reporter, to be kept by him; that if it had been preserved by the *Herald* company it would most likely be in his (witness') possession, but that it was kept by said Varian. No effort to procure the manuscript from Varian was proven. It was shown that Varian was not in the employ of the *Times-Herald*, but no attempt was made to show but that he continued to reside in the city, or that he could not. be found, or that any effort had been made to find him or to get the paper from him. The rule is, in order to let in secondary evidence of the contents of a written instrument the person in whose possession it was last traced must be produced unless shown to be impossible,

in which case search among his papers must be proved, if that can be done. In all events, search must be made for the paper with the utmost good faith, and be as thorough and vigilant as if the rule were that all benefit of the paper would be lost unless it be found. *Mariner* v. *Saunders*. 5 Gilm. 113; *Sturges* v. *Hart*, 45 Ill. 103; *Chicago and Northwestern Railway Co.* v. *Ingersoll*, 65 id. 399; *Williams* v. *Case*, 79 id. 356; 4 Ill. Cyc. Dig. pp. 524, 526, 527.

Counsel for the defendant in error, however, insist that the judgment should not be reversed because of the reception in evidence of the printed article, for the reason that previous to its reception in evidence declarations of the plaintiff in error had been proven, in substance, that the letter which appeared in the publication was the one which the reporter had received in the office of the plaintiff in error. The defendant in error, as a witness, had testified that the plaintiff in error admitted to him that the statement published in the newspaper was the same statement which the reporter, Varian, received in the office of the plaintiff in error. Counsel now insist, to quote from their brief, that "it is a well settled principle of law that admissions of a party against himself as to the contents of a writing are primary evidence." This contention cannot be regarded as an open question in this State. *Strader* v. *Snyder*, 67 Ill. 404, was an action on the case brought by Snyder against the appellants for an alleged libel published in a newspaper called the *Macomb Eagle*. The defendants were in no way connected with the newspaper establishment, and the prosecution was on the theory they had prepared the manuscript and delivered it to the editor for publication. The court permitted the plaintiff's counsel to read the printed article in evidence without first producing the original manuscript. We there held it was error to permit the printed publication to be read to the jury without first producing or accounting for the manuscript. In that case the evidence that the printed article and

the writing were the same was stronger than in the case at bar. It was there said (p. 408): "The evidence tends to show that Cracraft, one of the defendants, prepared, for the purpose of publication, a manuscript, which the other two defendants signed, and Cracraft put it into the hands of Dr. Fugate to copy, with directions to sign his (Cracraft's) name to it when copied. The evidence tends to show that this was done, and the manuscript, so copied, was sent to the editor of the paper, and that the other defendants admitted that they had signed it. Evidence was also given tending to show that in setting up the article there were changes made in the phraseology, but none altering the sense in respect to the alleged libelous words." But we there said that this evidence was secondary, and that the manuscript was the higher and better evidence and should have been produced. In *Clifford* v. *Drake,* 110 Ill. 135, the notes made by a reporter of a newspaper of the conversation had with the defendant, and the article prepared by the reporter, from the notes, for publication, were held to be primary evidence, and the rule was there recognized that the printed article was secondary evidence, and was competent to be received in evidence only after proof had been made excusing the production of the primary evidence. We think this rule has the support of the greater weight of authority. In 18 American and English Encyclopedia of Law (2d ed. p. 1076,) the rule deducible from the authorities is stated as follows: "In an action for libel the publication itself is, of course, the best evidence of the charges made in it, and the original document containing the defamatory matter must be produced, if possible; but where the original has been destroyed or lost beyond a reasonable hope of finding it, or is in the hands of an adverse party who refuses to produce, secondary evidence of the contents is admissible." In *Simpson* v. *Wiley,* 4 Porter, (Ala.) 215, it was held that the admissions of a defendant, made in a letter, as to the publication of a libel,

cannot be proved where the letter is not produced or its absence accounted for.

To hold the testimony of the plaintiff that the defendant said to or in the hearing of such plaintiff that a writing material to be produced in evidence contained certain statements to be sufficient to deprive the defendant of the right to be judged by the writing itself, is to abrogate in its entirety the rule that the contents of a writ-ten instrument cannot be proved by parol in the absence of proof accounting for and excusing the non-production of the writing.  Such testimony is proper as secondary proof of the contents of an instrument which has been shown to be lost or its production in some legal manner excused.  It is true, the defendant in error caused the plaintiff in error to be sworn as a witness, and, over the objection and exception of the plaintiff in error, asked him if he knew who composed that letter which appeared in the printed article, and the witness being required by the court to answer, replied, "Yes, sir; I did."  On cross-examination he said he could not say whether he wrote the article as it appeared in the newspaper, but that he wrote a letter "similar to it," which he allowed Mr. Varian, the reporter for the *Times-Herald*, to take from his office; that he did not authorize the publication of the article and had never seen the original since the reporter took it.  The court erred in overruling the objection to the question propounded to the plaintiff in error by counsel for the defendant in error.  The primary evidence of the contents of the writing was the instrument itself, and the court erred in forcing the plaintiff in error to become a party to an effort to prove the contents of such writing by the preponderance of parol proof as to the statement which appeared in the writing.

The judgment of the Appellate Court and that of the circuit court are each reversed, and the cause will be remanded to the circuit court for such other and further proceedings as to law and justice shall appertain.

208—7                              *Reversed and remanded.*