### DETERMINED IN

# THE SUPREME COURT

#### OF THE

## STATE OF WYOMING

[APRIL TERM, 1920]

## CASWELL v. ROSS

### (No. 955; Decided April 19, 1920; 188 Pac. 977.)

LOST INSTRUMENT—SUFFICIENCY OF PROOF PRELIMINARY TO AD-
MISSION OF SECONDARY EVIDENCE—CREDIBILITY OF WITNESSES—
BILLS AND NOTES—APPEAL AND ERROR.

1. In an action upon a note, the note must be produced in evi-
   dence if in the plaintiff's possession.
2. The credibility of witnesses who have given conflicting testi-
   mony was for the trial court, and not the appellate court,
   the trial court having seen and heard the witnesses and
   being in a better position to pass on the credibility of each.
3. In an action upon a lost note, parol testimony as to the note
   is admissible only upon satisfactory proof of the original
   existence, proper execution and genuineness of the instru-
   ment and that it has been lost or destroyed.
4. In an action on a note which plaintiff fails to produce in
   evidence, insufficient evidence as to its loss or destruction
   will preclude the admission of secondary evidence of its
   contents.
5. Proof sufficient to establish the loss of a written instrument
   as preliminary to the admission of secondary evidence of its
   contents, must show a diligent but unsuccessful search for

the instrument in the place where it belongs, or is most likely to be found; that the party has done all that could be reasonably expected of him under the circumstances of the case in searching for the instrument, or has in good faith exhausted a reasonable degree of accessable sources of information and means of discovery, which would be naturally suggested by the nature of the case. Also the loss or destruction of the instrument should be proved by the person in whose hands it was at the time of the loss, or in whose custody it may be presumed to be, or in whose possession it has been traced, if he is living, and in the jurisdiction of the court, or, in case he is out of the jurisdiction by his deposition if practicable or some excuse for not taking it.

6.  In an action upon a lost note the question as to the sufficiency of proof as to the lost note was primarily one for the court.

ERROR to the District Court, Crook County; HON. E. C. RAYMOND, Judge.

. Action by Dora B. Caswell against John A. Ross to recover upon a lost note. There was a judgment for defendant and plaintiff brings error.

*Henry Frawley and Harry P. Ilsley,* for plaintiff in error.

It was clearly established that the note in question had been introduced in evidence upon the trial of a former case between the same parties. It was delivered to the reporter and lost; the making of the note was not denied in the former trial; its loss was not the fault of plaintiff in error. This should be sufficient evidence of loss to warrant the admission of secondary evidence as to the contents of the note. The finding of payment is unwarranted by the pleadings and unsupported by evidence. Evidence is insufficient in law only where there is a total absence of evidence. (Halpin v. R. R. Co., 40 U. S. 181.) The defense of *res adjudicata* was unsustained by evidence. (Randall v. R. R. Co., 3 S. C. 22.) Sufficient evidence is that degree of proof sufficient to satisfy the mind and conscience of

a common man, so that he will venture to act upon that
conviction in matters of the highest concern to his own
interest.   To sustain an action on a written instrument
which has been lost, the contents must be shown by con-
vincing proof.  (Tucker v. Tucker, 118 Mass. 79; McDon-
ald v. Jackson, 56 Iowa 643; McDonald v. Thompson, 16
Colo. 13; Metcalf v. Van Benthuysen, 3 N. Y. 424; Ed-
wards v. Noyes, 65 N. Y. 125.)   There was sufficient evi-
dence to establish the loss.   (Otten v. Lefler, 17 Iowa 576;
Badgley v. Stinton, 10 Cal. 126.)   Secondary evidence as
to the contents of the instrument was clear and convinc-
ing, and sufficient under the law.  (Alno v. Lawrence, 17
B. Monroe 642; Anderson v. Keenan, 14 La. Ann. 716; Ying-
ling v. Kolhas, 18 Maryland 148.)   Where the evidence
shows the loss of a note, and it is executed, it is suffi-
cient.  (Tucker v. Tucker, *supra.*, Dollarhide v. Parks, 92
Mo. 178; Hill v. Bud, 34 Neb. 524; Hough v. Barton, 20 Vt.
455; U. S. v. Still, 5 Conn. 106.   When a note is lost by
accident without fault of the holder, the loss is merely
the loss of evidence since the note is not the debt.  (Cham-
berlain v. Sawyer, 19 O. 360.)   When a contract is to be
proven, not by itself, but by parol, the substance of the
agreement ought to be proven satisfactory and if that can
be done, the point is established.  (Tayloe v. Riggs, 1
Peters, 591; Rankin v. Croll, 19 Ill. 626.)   If the substance
of the instrument be proven, that warrants a judgment.
(Bennet v. Waaller, 23 Ill. 97; Day v. Filbrook, 36 Atl.
991; Moore v. Livingston, 28 Barber, 543; Edwards v.
Noys, 65 New York 125; Scurry v. Seattle, 56 Wash. 1.)
Where parol evidence proves the contents of the lost in-
strument and shows its substantial parts, verbal accur-
acy is not required, the substance being sufficient.  (Les-
ter v. Blackwell, 128 Ala. 143; Poster v. Rassett, 5 Cal.
467; Roll v. McDonald, 36 Geo. 39; Fletcher v. Shepherd,
174 Ill. 262; Camden v. Belgrade, 3 Atl. 652; Toye v.
Leighton, 24 New H. 29; Edwards v. Noys, 65 New York,

125; Gilmore v. Fitz Gerald, 26 Ohio 174.) There was evidence of the debt. (Scurry v. Seattle, 134 Am. St. Rep. 1095.)

*M. Nichols*, for defendant in error.

The action is based on a lost note; the Appellate Courts will not disturb findings if there be any evidence to support them; plaintiff utterly failed to establish her case; it is immaterial whether defendant in error borrowed money of plaintiff in error or not; the only issue in the case is as to the original existence of the note declared upon, and upon the conflicting evidence of the parties. The trial court was entitled to pass upon the credibility of the witnesses.

POTTER, JUSTICE.

This case is here on error for the review of a judgment rendered in favor of the defendant in the court below, and the only point urged as ground for reversal is that the evidence is insufficient to sustain the findings and judgment. Indeed it is contended that they are not supported by any evidence.

The action was brought by Dora D. Caswell against John A. Ross on a promissory note alleged to have been lost. The petition alleges, in substance, that on April 2, 1903, the defendant made, executed and delivered to the plaintiff his promissory note in writing for the sum of $365 with interest thereon at the rate of eight per cent. per annum from date; that the plaintiff is the holder and owner of said note, and that no payments have been made thereon, except the sum of $15.00 in August, 1907, $5.00 on October 6, 1909, and $30.00 on December 5, 1910; that there was due thereon at the time of the commencement of said suit the sum of $701.80; and, as explaining the failure to set out a copy of the note, that the said note has been lost or mislaid without plaintiff's fault or neglect.

The answer contains, first, a general denial, and, for a

second defense, states in substance that in a former action brought by the plaintiff, under the name of Dora D. Ross, for divorce against the defendant, all the property matters between said parties were fully adjudicated and settled; that said defendant in said suit, by cross-petition and answer, claimed that said parties since their marriage had accumulated considerable real and personal property, the title to which was in the plaintiff, and prayed that the plaintiff be required to pay the defendant a stated sum as his share of said property; that the plaintiff in her answer to said cross-petition alleged that she loaned the defendant $365 on April 2, 1903, as evidenced by a certain promissory note of that date; that the defendant replied denying his execution of such a note; and that the court in said action awarded the defendant the sum of $500 to be paid him by said plaintiff. On the trial, however, upon defendant's offer in evidence of the pleadings and judgment in said former action the same were excluded by the court upon an objection that the facts stated in said second defense were not sufficient as a plea of *res judicata* or as a defense to the note sued on.

The plaintiff testified on the trial of this case that on April 3, 1903, she loaned the defendant $365, which was evidenced by a promissory note for that amount with interest at eight per cent. from date, executed at Newcastle, Wyoming, and due in two years after date, upon which had been paid the sums of $15.00, $5.00 and $30.00, as stated in the petition, and also that the note was not in her possession, that she did not know what had become of it, and that she was still the owner and holder of the cause of action. On cross-examination she was further interrogated as to what had become of the note and thereupon testified, in substance, that the note was introduced in evidence in the divorce action brought by her against the defendant, and was then given to the reporter, and that she had not seen it since; that she had tried to find

the note, had written to Mr. Ilsley, one of her attorneys in this case, to find the note, and he had said he could not find it. But the character and extent of the search for the note made by said attorney, or whether she made any further search than to inquire of the attorney about it, is not disclosed by the evidence, and the above is the only evidence in the case respecting the loss of the note.

The only other evidence in the case consists of a certified transcript of the testimony of the plaintiff and defendant in the divorce action concerning the alleged note; that transcript having been prepared by the one who acted as court reporter at the trial of the divorce case, and received in evidence in this case, pursuant to a written stipulation of the parties, through their attorneys, reading as follows (omitting the venue and title of the case):

"It is agreed by and between the attorneys for the respective parties that G. Hartigan, now of Basin, Wyoming, who acted as court reporter, in the case of Dora D. Ross vs. John A. Ross, for divorce tried at Sundance, Wyoming in the district court, Hon. Percy W. Metz, presiding and the evidence taken by the said G. Hartigan. That the said G. Hartigan extend the evidence of both Dora D. Ross and John A. Ross, in so far as each of their testimony refers to the note Dora D. Ross claimed she held against John A. Ross, and nothing further, and that as such reporter he certify that he has extended and that the same he sends is all of the evidence given by both of said parties concerning said note and when so extended and certified the same may be read in evidence by either party thereto. Done at Sundance, Wyoming, this 26th day of October, 1917."

From said transcript it appears that the first testimony on the trial of the former case with reference to the note was given by John A. Ross, the defendant, on cross-examination, as follows:

Q.   Do you remember of borrowing $365 of Mrs. Ross?

A.   No sir, I don't.

Q.   Would you know your signature if you saw it?

A.   Of course, I cannot hardly read my writing **after** it is cold.

Q.   How about that?

A.   What is that there?

Q.   Is that your signature?

A.   That is the way I sign my name—no I don't think it is.

Q.   Do you know whether it is or not?

A.   I do not know for certain.

Q.   Did you borrow $365.00 from Mrs. Ross?

A.   I borrowed $265 from her at one time.

Q.   Did you give a note for $365?

A.   I did not give her a note for $365.   I gave her $95. She said she wanted it, said she wanted to use it, I gave it to her and I did not take any paper, I took her word for it.''

He then testified on re-direct examination as follows:

Q.   How about this money that he asked you about borrowing, the $265.   Did you ever pay any of that back save the $95?

A.   I recollect of giving her $30 at one time.

Q.   Any other?

A.   I gave her $20 in Belle Fourche another time, also $15 in Newcastle.

Q.   What did you do with the money you borrowed of her?

A.   I bought some wire with that money.

Q.   What did you do with the wire?

A.   I used it for fencing.

Q.   On the land she owns?

A.   No sir, not all of it, some of it.

Q.   What else did you buy with it?

A.   I bought groceries with it and stuff.

Q.   For the family?
A.   Yes, sir.
Q.   Was it used there on the ranch?
A.   Yes, sir.

It further appears that Dora D. Ross, who, as Dora D. Caswell, is plaintiff in this action, testified on rebuttal in said former case as follows:

Q.   Mrs. Ross, I show you plaintiff's No. 1 for identification and ask you to examine it, do you know what it is?
A.   Yes, sir.
Q.   What is it?
A.   That is a note given to me for $365 for money that he borrowed of me.
Q.   Who gave you the note?
A.   John A. Ross.
Q.   That is his signature?
A.   Yes, sir.
Q.   Calling your attention to his giving you $95 he testified to, can you explain what that was for?
A.   Well he gave me back $95 that I let him have down in Newcastle. We went down to Newcastle and I let him have it and he gave it back to me because I told him I wanted to use it, I told him if he needed any money later on he could get it. It was not $95, it was $80.

Letter read. Exhibit A offered in evidence.

Upon all the evidence in the case, including the above former testimony of the parties, the court found: That defendant did not make, execute and deliver to the plaintiff his notes for $365, but that he had borrowed $265 of the plaintiff sometime in the year 1902 and had fully paid the same, either in cash or by the purchase of supplies used by the parties as community property. And judgment was thereupon rendered dismissing the petition and awarding defendant his costs.

The testimony aforesaid of the parties on the former

trial is referred to and treated in the briefs here the same as if such testimony had been given by the parties respectively under oath as witnesses on the trial of this case. And we think that is the effect of the stipulation aforesaid, since it provides that such evidence may be read in evidence by either party, thereby allowing each to introduce his or her own former testimony as evidence in this case. And with respect to the former testimony of the defendant it may have been the purpose to provide for putting it in evidence as his testimony in this case to avoid the necessity of his attending the trial, for it does not appear that he was present at the trial, but it does appear that he had become a non-resident of the state.

We think the evidence must be held sufficient to sustain the findings and judgment. The evidence of the parties upon the question of the execution and delivery of the alleged note is clearly conflicting. The note was not produced in evidence, which was necessary if in the plaintiff's possession. (3 R. C. L. 1388; 8 C. J. 1044, Sec. 1357; Vanauken v. Hornbeck, 14 N. J. L. 178, 25 Am. Dec. 509; Doughty v. Funk, 24 Okl. 312, 103 Pac. 634.) But she testified on her direct examination that the note was not then in her possession, and that she did not know what had become of it. And thereupon, without objection, she testified as to its contents, the place and date of execution, and the payments thereon. In that part of her evidence she did not state that the note was executed by the defendant, but merely, in that respect, that she had loaned the defendant $365 on or about April 3, 1903, and that the loan was evidenced by a promissory note. But by her evidence in the former action introduced on the trial of this case, she testified, as shown above, that a certain paper then shown to her was a note given to her for $365 by the defendant, and, when asked, "That is his signature?" she said "Yes, sir." Whatever that paper was it appears to have been introduced in evidence in the former action, and, perhaps

it should be inferred that the "signature" referred to in the above quoted question was the signature to the paper described by her as a note given to her by the defendant. That is the only evidence in the case to prove that the alleged note or any other note was signed or executed by the defendant.'

That evidence is opposed by the defendant's testimony stating positively that he. did not give the plaintiff a note for $365. And this, we think, is to be considered as denying both the execution and delivery of such a note. Plaintiff's counsel seem to contend that he did not deny his signature to the note sued on. That contention can be based only upon the defendant's testimony that he did not know for certain whether a signature shown him on the trial of the former action was his or not, after having said that he did not think it was his signature. But there is nothing in the record of that testimony to show what the paper was that was then exhibited to him, nor whether the paper contained anything more than a written name; and if it might be assumed that he was shown and testified about the signature to the alleged note, we think his denial of the signature is made certain by his statement that he did not give such a note.

The finding that defendant did not execute and deliver the alleged note to plaintiff is sufficient in itself to support the judgment. In making that finding the court must either have believed the defendant's testimony as against that of the plaintiff, or that the latter was not entitled to greater credit as a witness than the former, and, therefore, had not made out her case by a preponderance of the evidence. As often said with reference to conflicting evidence before an appellate court, the trial court having seen and heard the witnesses testify is in a better position to determine the credibility of each. And that is true in this case, for, while the defendant's testimony was not given in the presence of the court upon the trial,

much the greater part of plaintiff's testimony was, so that the court had the opportunity to observe her demeanor as a witness and manner of testifying.

It appears from the record that the plaintiff was either unable or unwilling to testify on cross-examination concerning the payments alleged to have been made by the defendant. In an effort, apparently, of defendant's counsel to test her knowledge or recollection of such payments, about which she had testified on her direct examination, she was repeatedly asked on cross-examination to state the time and amount of the several payments. The first of these questions and the answer thereto were:

Q. Now, you say that he never gave you but $15.00 on this note?

A. No, sir. I never said that.

She was then asked, "How much did he give you?"

Her answer was: "The amount is in evidence. I never counted it up."

This was followed by the following questions and answers:

Q. I am asking you now to tell how much he paid you on this note.

A. Well, I never counted it and I couldn't count it anyhow to save my life.

Q. What is the first amount he paid you on the note?

A. I won't try to do that, because I can't.

Q. How?

A. I'll not try to do that because I can't.

Q. How much did he pay you the second time?

A. I can tell you when he paid the last payment because it was in Cheyenne.

Q. Can you tell how much he paid the second time?

A. No, sir. I won't try to.

Q. How much did he pay you at any time?

A. I said I wouldn't say.

Q.  Wouldn't try to tell?

A.  No, sir.  It is in the statement there.

The statement referred to by her in the last answer may
have been the petition in the case, for there is no other
paper in the record here containing a list of the alleged
payments, and when being examined on direct examination
with reference to the payments her counsel called her at-
tention particularly to the statement of the payments in
the petition.  This left her testimony as to the payments
uncertain and may have caused some doubt in the mind
of the court as to her ability to state accurately the con-
tents of the alleged note.

Under the circumstances, in view of the conflict in the
evidence as to the giving of the note, we do not think the
finding as to its execution and delivery or the other find-
ings or conclusions of the court should be disturbed.  But
the fact that the testimony was conflicting may not have
been the only ground upon which the court found against
the plaintiff.  The court may have concluded that the
plaintiff's testimony as to the giving of the note and its
contents was not entitled to consideration, for another
reason clearly disclosed by the record and equally de-
cisive of the case here.  Her testimony as to the note was
secondary evidence merely, and admissible only upon
satisfactory proof of the original existence, proper execu-
tion, and genuineness of the instrument, and that it had
been lost or destroyed.  (2 Daniels, Nego. Instr. Sec. 1471;
17 Cyc. 471, 536; 19 Ency. Law, 575; 25 Ency. Law, 165;
10 R. C. L. 917.)  That a paper had been in existence at
the time of the trial of the former action aforesaid which
the plaintiff then described as a note for $365 given to
her by the defendant for money borrowed from her, is
shown by her former evidence, and possibly that the sig-
nature thereto was that of the defendant.  But the show-
ing as to the loss of that paper is totally insufficient.  It
amounts to nothing more than proof that the note was not

in the possession of either the plaintiff or Mr. Ilsley, one
of her attorneys in the case. It appeared from the cross-
examination of the plaintiff that the alleged note had been
introduced in evidence in the former action and handed
to the reporter. But the reporter was not called as a
witness, nor was his deposition taken, and no reason or
excuse was offered, so far as the record discloses, for not
taking his testimony as to what had become of the note,
and, as previously stated in this opinion, nothing was
shown as to the extent or character of the search for the
note. For all that appears in the record here the instru-
ment may have been, at the time of the trial, in the pos-
session of the reporter, or of some other officer of the
court having custody or control of the court records or
the papers in the action aforesaid.

While it is said that no comprehensive rule can be
laid down as to the quantity or nature of the proof
sufficient to establish the loss of a written instrument
as preliminary to the admission of secondary evidence
of its contents, it is generally held that to be suffi-
cient such proof must show a diligent but unsuccess-
ful search for the instrument in the place where it
belongs or is most likely to be found, that the party
has done all that could be reasonably expected of him
under the circumstances of the case, in searching for
the instrument, or has in good faith exhausted in a
reasonable degree all accessible sources of information
and means of discovery which would be naturally sug-
gested by the nature of the case. And it is generally
held also that the loss or destruction of the instrument
should be proved by the person in whose hands it was
at the time of the loss, or in whose custody it may be
presumed to be, or to whose possession it has been
traced, if he is living and in the jurisdiction of the
court, or, in case he is out of the jurisdiction, that his
deposition should be procured if practicable or some

excuse given for not doihg so. (25 Ency. Law, 166;
17 Cyc, 543-546; Bogan v. McCutchen, 48 Ala. 493; Phoe-
nix Assur. Co. v. McArthor, 116 Ala. 659, 22 South 903,
67 Am. St. Rep. 154; Witter v. Latham, 12 Conn. 392;
Prussing v. Jackson, 208 Ill. 85; 69 N. E. 771 Simpson v.
Dall 3 Wall. 460; 18 L. Ed. 265 Kearney v. Mayor, 92 N.
Y. 617; Myers v. Bealer, 30 Neb. 280; 46 N. W. 479 Koehl-
er v. Schilling, 70 N. J. 585; 57 Ail. 154 King v. Randlett,
33 Cal. 318; Wiseman v. Nor. Pac. R. Co., 20 Or. 425, 26
Pac. 272, 23 Am. St. Rep. 135.) Thus in the case last cited
the court said:

"No competent evidence whatever was offered to prove
any search in the office of the traffic manager at Chicago
where it was shown the document was most likely to be
found. * * * * The testimony of the traffic manager
or some person in his office, having the custody of such
papers, should have been had, or some,proper effort made
to obtain it, showing what effort, if any, had been made
to find the original."

In the California case cited the court said:

"The evidence of the loss was insufficient. It showed
that in all probability the bill of sale was left in the plain-
tiff's store at Yorkshire at the time the plaintiff sold out
and delivered possession of the store and its contents to
his nephew. His nephew, at the time of the trial, was in
the county and in reach of the process of the court, yet he
was neither called as a witness as to what had become of
the bill of sale, nor does it appear that he was ever ques-
tioned by the plaintiff touching the missing document. It
is true that the plaintiff searched the store about a year
after the nephew took possession, but that was not suffi-
cient."

In the Nebraska case cited it appeared that the instru-
ment had been introduced in evidence as an exhibit at a
previous trial of the cause in the county court, and that
a witness called to prove the loss, apparently one of the

attorneys, testified that he had been unable since that trial
to find any exhibits in the case; that he had the county
judge search for them, and had been through all the pa-
pers there.  But the court held that the non-existence of
the paper had not been sufficiently established for the rea-
son that the county judge had not been called to testify
what search, if any, he had made for it.  The court said:
"For all that appears from this record, it is where the
county judge can place his hands upon it at any time.
The person in whose custody the paper was left should
have been called to establish that it was lost, before re-
ceiving oral testimony of its contents."

In Simpson v. Dall, supra, it was said by the supreme
court of the United States: "In order to show the loss of
the letters, it was necessary to prove that a diligent search
had been made for them where they were most likely to
be found.  There is no general rule as to the degree of
diligence in making the search; but the party alleging the
loss is expected to show (quoting from Greenleaf on Evi-
dence) 'that he has, in good faith, exhausted, and in a
reasonable degree, all the sources of information and
means of discovery which the nature of the case would
naturally suggest, and which were accessible to him.' "

In Prussing v. Jackson, supra, the supreme court of
Illinois, after referring to the fact that the missing paper
had been given into the hands of a person who had not
been called upon to testify as to any search made by him,
and that there was no showing that he had not been found
or that any effort had been made to get the paper from
him, the court said:  "The rule is, in order to let in sec-
ondary evidence of the contents of a written instrument
the person in whose possession it was last traced must be
produced unless shown to be impossible, in which case
search among his papers must be proved, if that can be
done.  In all events, search must be made for the paper
with the utmost good faith, and be as thorough and vigi-

lant as if the rule were that all benefit of the paper would be lost unless it be found.''

The Alabama case, Phoenix Assur. Co., v. McArthur, above cited, involved an insurance policy claimed to have been lost. The court said: ''The proof showed that the policy was in the possession of Murphree, and though issued, it had not been delivered to plaintiff. There had been no notice to Murphree to produce the policy. He did testify that he did not know where the policy was, and that he could not find it. This was not a sufficient showing. for the introduction of secondary evidence of the contents of the paper. The witness did not show where he looked for the policy, nor what the character of the search he made was—whether diligent or otherwise. He ought to have shown that he made a bona fide and diligent, but unsuccessful search for it in the place where it was most likely to be found.''

Although the plaintiff testified about the contents of the note on direct examination, without objection, after she had given a negative answer to questions asking her if the note was in her possession and if she knew what had become of it, it did not appear until she was being cross-examined that the paper described by her had been produced and introduced in evidence upon the trial of the former action, and given to the reporter.

While the question as to the sufficiency of the proof as to the loss of the alleged note was primarily one for the court, this case was tried to the court without a jury, so the court had that question before it as well as the ultimate question whether upon all the evidence the plaintiff was entitled to recover. And we think the court might well have declined to consider the plaintiff's testimony as to the giving of the note, so far as in conflict with the defendant's testimony, on the ground of the insufficiency of the proof of the alleged loss of the note and that no reasonable excuse was shown for not producing it in evi-

dence. That would, at least, be a sufficient ground, in our opinion, for refusing to disturb the judgment. (Sebree v. Dorr, 9 Wheat. 558; Doughty v. Funk, 24 Okl., 312, 103 Pac. 634.) The judgment will be affirmed.

*Affirmed.*

BEARD, C. J., and BLYDENBURGH, J., concur.